NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

CAMERON IRON WORKS, INC., and International Association of Machinists and Aerospace Workers, Local No. 15, AFL–CIO, Respondents.

No. 78–2252

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

March 12, 1979.

---

* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

**2**

Elliott Moore, Deputy Assoc. Gen. Counsel, William R. Stewart, Supervisor, Alan Banov, Atty., John S. Irving, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Assoc. Gen. Counsel, NLRB, Washington, D. C., for petitioner.

W. Carl Jordan, William John Bux, Vinson & Elkins, Chris Dixie, Louise Jacobson Gilmore, Mark Laurence Waterman, Dixie Wolf & Dixie, Houston, Tex., for respondents.

Louis V. Bladovin, Jr., Director, Region 23 N.L.R.B., Houston, Tex., for other interested parties.

Before BROWN, Chief Judge, COLEMAN and VANCE, Circuit Judges.

PER CURIAM:

This is an application by the NLRB for enforcement of an order requiring Cameron Iron Works (the company) and International Association of Machinists and Aerospace Workers (the union) (1) to cease certain acts the Board found to constitute violations of §§ 8(a)(1), 8(a)(3), 8(b)(1)(A),· and 8(b)(2), and (2) to reimburse injured employees. We deny enforcement.

For several years the company and the union have had collective bargaining agreements concerning the employees at the company's tool and equipment plant in Houston, Texas. The contract in effect in 1971 provided that the company would deduct union dues from the salary of each employee who executed a "dues checkoff authorization" form (as allowed by § 302(c)(4) of the Labor Management Relations Act).[1] The form stated that

> [t]his authorization is voluntary and shall be irrevocable for the period of one (1) year from the date signed and I agree that it shall be automatically renewed and shall be irrevocable for successive Collective Bargaining Agreements between the Company and the Union unless revoked by me giving written notice to the Company during the period of fifteen (15) days following the anniversary date of the signing of this authorization. Otherwise, this authorization shall continue in effect unless revoked by me during a period of revocation as above provided.

Pursuant to this clause, employees Maness and Bain signed authorizations in 1971. In 1974 the company and the union negotiated a new contract, part of which added one small provision to the revocation procedure—notice to the union as well as to the company. Before the member-employees voted on the new contract, the union held meetings at which each provision of the new contract was reviewed. Maness and Bain both attended. Immediately prior to the new contract's taking effect, each member had an opportunity (as required by 302(c)(4)) to revoke authorization. Neither Maness nor Bain did so.

---

1. **29 U.S.C.A. § 186. Restrictions on financial transactions**

\* \* \* \* \* \*

**Exceptions**

(c) The provisions of this section shall not be applicable

\* \* \* \* \* \*

(4) with respect to money deducted from the wages of employees in payment of membership dues in a labor organization: *Provided,* That the employer has received from each employee, on whose account such deductions are made, a written assignment which shall not be irrevocable for a period of more than one year, or beyond the termination date of the applicable collective agreement, whichever occurs sooner; \* \* \*

In July 1974, after the effective date of the new agreement, both employees went to the company's personnel office to revoke their dues authorizations. They were both told that they would have to wait until August, the anniversary date of their original assignments. Maness post-dated his revocation form, while Bain returned in August. Both were reminded to send a copy of the revocation form to the union. Bain never did so, and although Maness claimed to have sent notification, the union never received it.

The company stopped deducting dues from the salaries of both employees. When the union's secretary-treasurer discovered this, he complained to the company that the revocations had been ineffective and that the company must resume the deductions. When the company complied, the employees complained. After several months, the union prevailed and the company continued paying the deducted amounts to the union.

The employees filed complaints against the company and the union, but the ALJ dismissed both in November of 1975. The General Counsel then filed objections but did not serve them on the company or the union. Thirteen months later, in December of 1976, the Board reversed the ALJ's decision and adopted the position of the General Counsel. It found that Maness and Bain had effectively revoked dues authorization and that the company and the union had committed unfair labor practices in continuing to deduct dues.

This was the company and the union's first notice of the objections. In August 1977 in response to objections by the respondents, the Board rescinded its 1976 order and allowed General Counsel to refile. This time, the company and the union were properly served. The company replied, asking that the Board adopt the ALJ's findings. The Board, however, readopted its prior position. Its order requires the company to cease and desist (1) from committing the unfair labor practices found, (2) from encouraging membership in or support for the union, and (3) from interfering with the employees' Section 7 rights in any like or related manner. Similarly, it requires the union to cease (1) causing the company to dishonor dues revocations that are in accord with authorizations executed by the individual revoking employees, (2) discriminating against Maness, Bain, or any other employee, and (3) restraining or coercing employees in any like manner in the exercise of Section 7 rights. Affirmatively, the order requires the company and the union, jointly and severally, to reimburse improperly deducted dues to Maness and Bain and to post appropriate notices.

The Board contends that its construction of § 302(c)(4) in this case "involved its 'special function of applying the general provisions of the Act to the complexities of industrial life' while 'balancing . . . conflicting legitimate interests.'" The company and the union, on the other hand, argue persuasively that the Board cannot redress a mere § 302 violation. Pointing out that enforcement of that section is the responsibility of the Department of Justice, the company cites *Salant & Salant*, 1950, 88 NLRB 816, 817, in which the Board stated that "the limitations on checkoff in Section 302 were intended neither to create a new unfair labor practice, nor even to be considered in determining whether checkoff violates § 8 of the Act." Since we find that, regardless of whether § 302 vests the Board with authority to act, the company and the union committed no unfair labor practices, we decline to add any gloss to that statute.

Turning now to the § 8(a) violations, we will first address the company's conduct. The Board has repeatedly held that an employer who has acted reasonably and in good faith in construing the dues checkoff authorization card and the collective bargaining agreement's provisions regarding revocation has not infringed upon an employee's exercise of Section 7 rights. It thus has not violated § 8(a)(1). American Smelting and Refining Co., 1974, 200 NLRB 1004; Miller Brewing Co., 1971, 193 NLRB 528; Morton Salt Co., 1958, 119 NLRB 1402. In the proceedings below the ALJ found that the company had acted both reasonably and in good faith, and the Board never

**4**

specifically found otherwise. We see no reason to disturb the ALJ's finding. The company reasonably relied on the language of the collective bargaining agreement—it did nothing to hinder the employees. In fact, its personnel office urged both Maness and Bain to comply with the procedure, thus seeking to insure their effective revocation.[2]

■ Section 8(a)(3) states that it is an unfair labor practice for an employer "by discrimination in regard to hire or tenure of employment to encourage or discourage membership in any labor organization." Again, the ALJ made no finding of discrimination. And although the Board found that the company encouraged *support* of the union, it did not find that the company *discriminated* against the employees or that it encouraged or discouraged union *membership*.[3] We have not independently found any evidence, (and the Board has pointed to none) of discriminatory motive. No like cases were treated differently. The Board's finding of an 8(a)(3) violation is therefore unsupportable.

■ Similarly we do not think that substantial evidence supports the Board's finding that the union violated §§ 8(b)(1) and (2). Regarding § 8(b)(1) the Board did not determine that the act of requiring notice to the union constituted coercion or restraint of the employees' exercise of § 7 rights. It merely found that the employees could not be held to revocation procedures implemented *after* they executed their checkoff authorizations. This conclusion, however, ignores the fact that both employees *were* given an opportunity—immediately after negotiation of the new contract—to revoke without complying with the new procedure. Moreover, we cannot agree that the addition of this nonburdensome procedural requirement infringed seriously upon

the employees' revocation rights or options. Concerning the § 8(b)(2) violation, we recognize that the union urged the company not to honor Maness' and Bain's revocation attempts. There is every indication, however, that the union reasonably thought that the revocations were ineffective. Finally, there is no evidence of different treatment of like cases.

Finding no evidence to support the Board's determinations, we deny enforcement of its orders.

ENFORCEMENT DENIED.

---

**2.** We also tend to agree with the company that the Board sought to impose an unreasonable burden on the company and the union—a requirement that they obtain new signatures from each of the 3,000 employees every time a minor clerical detail is changed in revocation procedure.

**3.** We think that the lack of a specific finding of discrimination is extremely significant.

\* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.*, 5 Cir., 1970, 431 F.2d 409, Part I.