**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**The COOPER UNION FOR the ADVANCEMENT OF SCIENCE AND ART, Respondent,**

**The Cooper Union Federation of College Teachers, Intervenor.**

**No. 395, Docket 85–4063.**

United States Court of Appeals,
Second Circuit.

Argued Nov. 22, 1985.
Decided Jan. 30, 1986.

Michael D. Fox, N.L.R.B. (Rosemary M. Collyer, Gen. Counsel, Paul J. Spielberg, Deputy Asst. Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, of counsel), for petitioner.

John W. Dean, Milbank, Tweed, Hadley & McCloy, New York City (Eugene F. Farabaugh, John M. Hinchcliff, William H. Roth, Milbank, Tweed, Hadley & McCloy, New York City, of counsel), for respondent.

John J. Naun (James R. Sandner, New York City, J. Christopher Meagher, of counsel), for intervenor.

Woodley B. Osborne, Friedman & Wirtz, Washington, D.C., for amicus curiae American Federation of Teachers.

Before FEINBERG, Chief Judge and MANSFIELD and OAKES, Circuit Judges.

## PER CURIAM:

The National Labor Relations Board ("Board" or "NLRB") petitions this court to enforce its order directing the Cooper Union for the Advancement of Science and Art ("Cooper Union") to bargain with a bargaining representative of its full-time faculty members on the grounds that they are neither managerial nor supervisory employees. We grant the petition.

## BACKGROUND

Cooper Union is a private, nonprofit, tuition-free institution of higher education located in Manhattan, consisting of three degree-granting schools: The Schools of Art, Architecture, and Engineering.[1] Cooper Union has a student body of approximately 900 to 1,000 students and employs approximately fifty-five to sixty full-time and eighty part-time faculty members. The Cooper Union Charter vests ultimate authority in a sixteen-member board of trustees, a board which has no faculty representatives on it.

In 1974, following an NLRB-supervised election, the Cooper Union Federation of College Teachers, AFT, NYSUT, AFL–CIO ("the Union") was certified to represent a unit of full-time faculty members and librarians. Part-time (adjunct) faculty, deans, assistant deans, division heads, and the library head were excluded from the bargaining unit. In 1978 the Union and Cooper Union entered into their only collective bargaining agreement, which expired in August, 1980. Shortly before this expiration date, and following the Supreme Court's decision in *NLRB v. Yeshiva University*, 444 U.S. 672, 100 S.Ct. 856, 63 L.Ed.2d 115 (1980), Cooper Union withdrew its recognition of the Union and refused to bargain with it.

An administrative law judge dismissed a complaint against Cooper Union that charged it with unfair labor practices under section 8(a)(5) and (1) of the National Labor Relations Act ("the Act"), 29 U.S.C. § 158(a)(5) and (1) (1982). He concluded that the full-time faculty were managerial employees within the meaning of *Yeshiva*, and therefore outside the protections of the Act. The Board reversed the ALJ, finding

---

**1.** Prior to 1975, the Schools of Art and of Architecture were combined as one school—the School of Art and Architecture.

that the bargaining unit members did not exercise sufficient authority over academic matters to be considered managerial employees under *Yeshiva*.

## DISCUSSION

Our role in reviewing a decision of the Board is a limited one. Congress has assigned to the Board the primary function of balancing competing interests to effectuate national labor policy, and this court will enforce the Board's application of a rule that is rational, consistent with the Act, and supported by substantial evidence on the record as a whole. *Beth Israel Hospital v. NLRB*, 437 U.S. 483, 500–01, 98 S.Ct. 2463, 2473, 57 L.Ed.2d 370 (1978).[2]

Although the Act does not explicitly exclude managerial employees, as it does supervisors, *see* 29 U.S.C. § 152(3), the Supreme Court has held that the Act implies such an exclusion. *See NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 288–89, 94 S.Ct. 1757, 1768–69, 40 L.Ed.2d 134 (1974). The rationale behind this exclusion is that "an employer is entitled to the undivided loyalty of its representatives." *Yeshiva*, 444 U.S. at 682, 100 S.Ct. at 862. The Court has defined managerial employees as those who " 'formulate and effectuate management policies by expressing and making operative the decisions of their employer.' " *Bell Aerospace*, 416 U.S. at 288, 94 S.Ct. at 1768 (quoting *Palace Laundry Dry Cleaning*, 75 N.L.R.B. 320, 323 n. 4 (1947)).

In *Yeshiva* the Court held that this definition applies to those college faculties that "exercise discretion within, or even independently of, established employer policy," adding that the faculty "must be aligned with management." *Yeshiva*, 444 U.S. at 683, 100 S.Ct. at 862. Under *Yeshiva*, a faculty need only exercise "effective recommendation or control, rather than final authority," to be managerial. *Id.* at 683 n. 17, 100 S.Ct. at 863 n. 17. The Court found that the Yeshiva faculty's authority was "absolute" in "academic matters" such as course offerings, scheduling, grading, matriculation, and admissions, *id.* at 686, 100 S.Ct. at 864, and that the faculty "play a predominant role in faculty hiring, tenure, sabbaticals, termination and promotion." *Id.* at 686 n. 23, 100 S.Ct. at 864 n. 23.

Although the Court concluded that Yeshiva's faculty was managerial, it noted that there may be faculty at other institutions of higher learning that are nonmanagerial. *Id.* at 690 n. 31, 100 S.Ct. at 866 n. 31. In the wake of *Yeshiva*, the Board and courts of appeals have engaged in intensive fact-based analyses to determine whether a particular college faculty is managerial. *See, e.g., NLRB v. Lewis University*, 765 F.2d 616 (7th Cir.1985); *Loretto Heights College v. NLRB*, 742 F.2d 1245 (10th Cir.1984); *College of Osteopathic Medicine & Surgery*, 265 N.L.R.B. 295 (1982); *Ithaca College*, 261 N.L.R.B. 577 (1982).

Cooper Union's faculty has significant authority in certain core academic matters, but certainly not the "absolute" authority of Yeshiva's faculty, nor even "effective recommendation or control." *See Yeshiva*, 444 U.S. at 683 n. 17, 100 S.Ct. at 863 n. 17. The evidence before the Board shows that, in response to financial concerns, the trustees instituted major changes in 1972–73 with minimal faculty input and against strong faculty opposition.[3] The trustees again restructured authority in both academic and nonacademic areas.

2. We recognize that when the Board makes findings inconsistent with the ALJ, as here, the findings are more open to question than if the Board and the ALJ had reached the same result, but only if the evidence turns on the credibility of the witnesses. *Local 259, UAW v. NLRB*, 776 F.2d 23, 27 (2d Cir.1985); *Ewing v. NLRB*, 732 F.2d 1117, 1120–21 (2d Cir.1984). Although the ALJ apparently made some findings based on credibility, they do not overcome the extensive findings made by both the ALJ and the Board that the administration exercised extraordinary

3. The 1972 changes included consolidation of departments into larger divisions, replacement of faculty-elected department chairpersons with division heads appointed by the president, the creation of new degree programs in mathematics, physics, and the distributive sciences, and the creation and filling of the position of provost.

Cooper Union in 1975 without faculty participation and over their strong opposition.[4] The authority of bargaining unit faculty over academic matters was also weak because of the presence of administrators, nonbargaining unit (part-time) faculty, and students on various committees, and the power of deans to control the agenda and meeting times of many of the committees. The Board's findings that the committee structure and the changes that Cooper Union's administration unilaterally instituted[5] often rendered faculty authority ineffective in core academic areas are amply supported by the record.

The evidence also strongly supports the findings of both the Board and the ALJ that in the nonacademic areas noted by the Court in *Yeshiva* the faculty was extremely weak. The Cooper Union faculty has virtually no role in the areas of budget and facilities. Even faculty access to ordinary office supplies is restricted. The faculty has no input into the appointment, retention, or employment conditions of nonteaching staff. Faculty input into appointment of teaching staff and administrative positions has frequently been bypassed, and faculty tenure and promotion recommendations have frequently been rejected. *Compare Lewis University*, 765 F.2d at 623 (president vetoed only five of 118 faculty recommendations for tenure and promotion; faculty found managerial); *Loretto Heights College*, 742 F.2d at 1250 (al-

though president had in recent years accepted all faculty committee recommendations on promotion and tenure. Board and court found faculty nonmanagerial); *Ithaca College*, 261 N.L.R.B. at 578 (faculty recommendation in tenure and promotion followed in 119 of 120 cases; faculty found managerial). The administration, not the faculty, makes leave-of-absence and even sabbatical determinations.[6]

The Board had before it an extensive record of faculty-administration conflict arising out of the unilateral changes instituted by the administration in the early to mid-1970's. This conflict culminated in the Senate dissolving itself and in the faculty's decision to engage in collective bargaining. *Yeshiva* makes clear, of course, that the fact that a college faculty chooses to unionize does not mean it is nonmanagerial. However, we would have to ignore the extensive evidence of conflict and of broad administrative authority to implement changes over faculty opposition in core academic areas such as curriculum to find that the Cooper Union faculty is "aligned with management." For example, after Cooper Union on June 26, 1980, asserted that the faculty were managerial employees and refused to bargain with the union, it unilaterally revised the governances and terms and conditions of employment. We agree that the Board had before it substantial evidence that the Cooper Union faculty did not

In 1973 the administration implemented changes that included increasing class size, the student-faculty ratio, and teaching loads, severely limiting tenure grants, reducing the number of full-time faculty through attrition, and increasing the proportion of adjunct faculty. These changes were implemented while still under consideration by the student-faculty senate.

4. These changes included eliminating the divisions and division heads, leaving the schools as the primary structural academic units, dividing the School of Art and Architecture into two separate schools, creating the "Faculty of Liberal Arts and Science" entirely outside the degree-granting schools, thereby effectively disenfranchising almost half the faculty, and eliminating the curricula leading to degrees in mathematics, physics, and distributive science. As a result of these changes, eight tenured faculty members were laid off permanently.

5. In 1975 the dean of the School of Engineering, without faculty consideration, promulgated an amended governance for that school that, inter alia, delegated all administrative functions to the dean. Over strong faculty opposition, in 1977 Cooper Union entered into a library consortium that delegated administrative control and purchasing to New York University.

6. A 1978 evaluation team from the Middle States Association of Colleges found that Cooper Union's structure was distinguished by the fact that the deans were unusually strong and the faculty unusually weak. The team noted inter alia the absence of a mechanism by which the faculty could review institution-wide academic policies and priorities.

exercise effective recommendation or control in academic or nonacademic areas, and that they are not managerial or supervisory employees.[7] Accordingly, we grant the petition to enforce the Board's order to Cooper Union to recognize and bargain with the Union.

---

7. We do not intend by this opinion either to criticize or condone the actions taken by Cooper Union's administration in response to serious financial pressures. We simply make clear that the consequence of such actions may be to make a college faculty nonmanagerial within the meaning of *Yeshiva* and the Act.