**SUPERIOR BAKERY, INC., Petitioner, Cross–Respondent,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent, Cross–Petitioner.**

**Nos. 263, 368, Dockets 89–4072, 89–4098.**

United States Court of Appeals, Second Circuit.

Argued Nov. 16, 1989.

Decided Jan. 8, 1990.

Thomas W. Budd, New York City (Clifton Budd & DeMaria, Eric S. Lamm, Richard K. Muser, of counsel), for petitioner, cross-respondent.

Margaret G. Bezou, Atty., N.L.R.B., Washington, D.C. (Peter Winkler, Supervisory Atty., Joseph E. Desio, Acting Gen. Counsel, Robert E. Allen, Associate Gen. Counsel, Aileen A. Armstrong, Deputy Associate Gen. Counsel, N.L.R.B., Washington, D.C., of counsel), for respondent, cross-petitioner.

Before LUMBARD, FEINBERG and MESKILL, Circuit Judges.

FEINBERG, Circuit Judge:

Superior Bakery, Inc. (Superior) petitions for review of a May 1989 order of the National Labor Relations Board, and the Board cross-applies for enforcement. The Board held, among other things, that Superior had violated §§ 8(a)(1) and (5) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(1) and (5), when it withdrew recognition from a union based upon a petition indicating loss of employee support for the union, in which the signature of a supervisor as defined in the Act was crucial. The question whether a supervisor's signature may be considered in this context is one of first impression in this circuit. For reasons set forth below, we deny Superior's petition and grant the Board's cross-application to enforce its order, reported at 294 N.L.R.B. No. 21 (May 25, 1989).

## Background

Superior is a wholesale bakery in North Grosvenordale, Connecticut. In 1969, Local 50, Bakery, Confectionery and Tobacco Workers, AFL–CIO (the Union) began to represent Superior's workers. This representation continued until the events giving rise to this litigation.

In 1984, Superior offered the position of supervisor to Gerard Julian, an employee in the bargaining unit. Julian declined the offer, however, because he wished to retain his membership in the Union in order to preserve his rights to a pension and other benefits. Superior then created the position of "working foreman," in which Julian would exercise some supervisory functions but, with the agreement of the Union, still retain his membership in the Union and the bargaining unit. Julian received a pay increase of $30 per week in his new job.

The collective bargaining agreement between Superior and the Union expired on December 31, 1986. Prior to its expiration, Superior and the Union began bargaining for a new agreement, and negotiations continued into February 1987. On February 18, 1987, however, an employee in the bargaining unit asked Julian to circulate a petition to decertify the Union as the bargaining representative. Julian initially declined to do so. However, he later signed the petition himself, solicited the signatures of two employees and eventually presented the petition to Superior's management. Twenty employees in the bargaining unit, including Julian, signed the petition. At the time, there were at least 39 employees in the unit.

Superior received the petition at approximately 9:00 a.m. on February 18, and lost little time in acting upon it. Only two hours later, Superior had posted at its plant a notice advising the employees that it would withdraw recognition from the Union. Superior also announced an increase in wages and a new benefit package. And by the next day, February 19, Superior suggested to its employees that they form an employee committee as an alternative to the Union.

Shortly thereafter, the Union filed unfair labor practice charges with the Board, which resulted in the issuance in May 1987 of a complaint against Superior. The complaint alleged that Superior's actions in withdrawing recognition from the Union, and in refusing to bargain with the Union, as set forth above, violated §§ 8(a)(1), (2) and (5) of the Act.

After an evidentiary hearing, an administrative law judge (ALJ) ruled in favor of the Board in June 1988. The ALJ found, among other things, that Julian was a statutory supervisor, that is, a supervisor within the meaning of § 2(11) of the Act, 29 U.S.C. § 152(11).[1] Although the ALJ felt "constrained" by the Board's decision in Indiana Cabinet Co., 275 N.L.R.B. 1209 (1985), to hold that Julian's signature could be counted in this context, the ALJ nevertheless ruled that a majority of Superior's employees had not signed the petition;[2] therefore, at the time it withdrew recognition from the Union, Superior could not have had a good faith belief that the Union had lost majority support. In addition, the ALJ found that Superior had violated the Act by suggesting, establishing and assisting an employee committee for the purpose of bargaining over employee working conditions. The ALJ recommended an order that, among other things, required Superior to again recognize and bargain with the Union.

On review, the Board reached the same result, although for somewhat different reasons. The Board agreed with the ALJ that Julian was a statutory supervisor. But the Board ruled that, as a supervisor, Julian could not provide the decisive signature to justify the withdrawal of recognition. In addition, the Board distinguished *Indiana Cabinet,* and declined to follow it in any event, ruling that Superior could not rely on the employees' petition to show good faith doubt of the Union's majority support.

---

**1.** Section 2(11) defines a "supervisor" as

any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.

29 U.S.C. § 152(11).

**2.** The ALJ found that two signatures on the petition should not be counted.

## Discussion

### A. *Statutory Supervisor*

Superior argues that the Board erred in concluding that Julian was a supervisor within the meaning of the Act. At the outset, we note that "[o]ur role in reviewing a decision of the Board is a limited one." *NLRB v. Cooper Union for Advancement of Science & Art*, 783 F.2d 29, 31 (2d Cir.) (per curiam), cert. denied, 479 U.S. 815, 107 S.Ct. 70, 93 L.Ed.2d 27 (1986). "[T]his court will enforce the Board's application of a rule that is rational, consistent with the Act, and supported by substantial evidence on the record as a whole." *Id.* Indeed, because of the Board's expertise in deciding who is and who is not a supervisor within the meaning of § 2(11) of the Act, "the Board's findings in this area are entitled to 'special weight.'" *NLRB v. Porta Systems Corp.*, 625 F.2d 399, 401 (2d Cir. 1980) (quoting *Amalgamated Local Union 355 v. NLRB*, 481 F.2d 996, 999–1000 (2d Cir.1973)).

■ The definition of "supervisor" in section 2(11), see note 1 supra, is in the disjunctive; thus, an employee who meets any of the criteria set forth in the section is a supervisor under the Act. *NLRB v. Metropolitan Life Ins. Co.*, 405 F.2d 1169, 1173 (2d Cir.1968). We believe that the Board's determination that Julian was a statutory supervisor is supported by substantial evidence on the record as a whole. For example, Julian had authority to discipline other employees, a factor specifically listed in the statutory definition. The record contained several warnings that Julian had signed as "Foreman or Supervisor" for infractions such as defective work, excessive absenteeism and disobedience. In addition, Julian also issued verbal warnings.

There was also evidence that Julian exercised authority to direct the work of other employees, another power specifically listed in the statutory definition. Julian was responsible for opening the plant in the evening before the first shift, and for preparing the production schedule governing what goods were to be baked that night. He also spent about 80% of his time supervising other employees—i.e., walking around the plant floor and overseeing production—rather than doing production work. Julian was the only person in charge for at least three to four hours during the first shift, until the arrival of an employee who was concededly a statutory supervisor.

Superior correctly points out that the record also contains evidence suggesting that Julian was no different from the other employees in the bargaining unit. This shows only that the issue before the ALJ and the Board was a close one, which we readily recognize. But the Board has decided the issue against Superior, and there was sufficient evidence to support its decision.

Superior further contends that the Board's determination cannot be reconciled with our decision in *NLRB v. Monroe Tube Co.*, 545 F.2d 1320 (1976). In *Monroe*, we reversed the Board's determination that an employee—whose job resembled Julian's in several respects—was a statutory supervisor, finding instead that his "position could more accurately be characterized as that of a leadman." *Id.* at 1325. We believe, however, that *Monroe* is distinguishable. Our holding in *Monroe* rested on the finding that the employee's "exercise of authority was of a strictly routine nature pursuant to" his supervisor's directions. *Id.* The evidence in the present case, by contrast, establishes that Julian exercised considerably more than "strictly routine" authority. For example, the ALJ justifiably found that Julian had authority "to effectively recommend discipline exercising the use of independent judgment." In addition, Julian had authority to assign work to employees and to set their schedules; according to the ALJ, Julian "[p]resumably ... would be exercising independent judgment in this function because he would select the people necessary to do the work at the times he chose." By contrast, the employee in *Monroe* "allocated work to members of the night shift but only in accordance with the directions of ... the mill foreman during the day shift." *Monroe*, 545 F.2d at 1324.

## B. *Good Faith Doubt*

Even if Julian was a statutory supervisor, Superior nevertheless asks us to set aside the Board's order. Superior argues that the Board erred in concluding that it could not rely on the employees' petition to show good faith doubt of majority support for the Union.

Our review of the Board's finding as to good faith doubt, like our review of the Board's ruling that Julian was a statutory supervisor, is relatively narrow. "[D]etermination of the sufficiency of the employer's evidence regarding loss of majority status or good faith doubt is a question of fact for the Board which is subject to limited review." *NLRB v. Koenig Iron Works, Inc.*, 681 F.2d 130, 137 (2d Cir. 1982). The employer must come forward with clear and convincing evidence indicating loss of union support, id., in order to rebut the presumption of a union's continuing majority status. *Fall River Dyeing & Finishing Corp. v. NLRB*, 482 U.S. 27, 38, 107 S.Ct. 2225, 2233, 96 L.Ed.2d 22 (1987). In addition, because of the policy against destabilizing "the collective bargaining process," the employer's assertion of the good faith doubt defense must be "carefully scrutinized." *Koenig*, 681 F.2d at 137. Also, "the NLRB's determination must be affirmed if supported by substantial evidence in the record as a whole." *NLRB v. Windham Community Memorial Hosp.*, 577 F.2d 805, 811 (2d Cir.1978).

Applying these principles, it was plain from the face of the petition that Julian's signature was critical to decertification. And Superior was aware that Julian's job included at least some supervisory power and responsibilities different from those of other employees in the bargaining unit. Indeed, Superior's 1984 letter informing the Union of Julian's new job specifically mentions its intention to correct a "lack of supervision" problem. Under these circumstances, we believe that the Board's determination that, judged objectively, see *Windham Community Memorial Hosp.*, 577 F.2d at 811, Superior did not have a good faith doubt as to the Union's majority status is supported by substantial evidence.

However, Superior argues that the Board erred in holding that Julian's signature could not be considered on the employees' petition as indication of the Union's loss of majority status. First, Superior contends that the Board's decision contradicts principles of federal labor policy; since Superior and the Union agreed to include Julian in the bargaining unit, the Board's decision frustrates the policy of giving effect to agreements between unions and management. Such an agreement, however, does not bind the Board, and does not prevent the Board from determining that an employee was, in fact, a statutory supervisor. See, e.g., *NLRB v. Elliott Williams Co.*, 345 F.2d 460, 463 (7th Cir.1965).

Next, Superior argues that the Board's decision is in conflict with its earlier decision in *Indiana Cabinet*, 275 N.L.R.B. 1209 (1984). In that case, according to Superior, the Board ruled that the signature of a statutory supervisor could be counted for purposes of determining whether an employer has a good faith doubt of a union's majority status. Superior claims that since the Board changed its rule on this issue without explanation, its decision is not entitled to the usual deference, citing *District Lodge 91, Int'l Ass'n of Machinists v. NLRB*, 814 F.2d 876, 879 (2d Cir.1987).

It is not clear that the Board did change its rule in this case, because it did distinguish *Indiana Cabinet*, emphasizing that the case "seems to have turned on its singular facts." 294 N.L.R.B. No. 21, at 2 n. 3 (May 25, 1989). But assuming arguendo that the Board did change its rule, the issue is one of policy, about which "[t]he Board is entitled to change its mind, so long as the new general standard is applicable to all litigants." *NLRB v. Niagara Mach. & Tool Works*, 746 F.2d 143, 148 (2d Cir.1984). And the Board did give reasons, noting that:

It is axiomatic that despite agreement among the parties to include a supervisor in a bargaining unit, the Board will not find a statutory supervisor to be eligible

to vote in a Board election. As we have stated elsewhere: "There is no question but that it would contravene the policies of the Act and the Board knowingly to permit the ballots of supervisors to determine the results of the election." Similarly, here we cannot knowingly permit the signature of Julian, a statutory supervisor to determine disaffection from the Union.

294 N.L.R.B. No. 21, at 2 (footnotes omitted; quoting Fisher–New Center Co., 184 N.L.R.B. 809, 810 (1970)).

The Board thus extended its usual rule regulating elections and certifications to the withdrawal of recognition context. Superior argues that the situations are different, and so they are. But we do not see why the Board is foreclosed from enforcing the same policy in both. If a supervisor's position for or against a union (signified by a ballot) cannot determine the result of an election for a bargaining representative, we see no persuasive reason why the supervisor's position (signified by a signature) should "determine disaffection" from the Union. At the very least, the Board's "formulation of the rule ... was plainly reasonable." *Niagara Mach. & Tool Works,* 746 F.2d at 148.

Finally, Superior asserts that the Board should not be allowed to apply this new interpretation retroactively to Superior's conduct that occurred at a time when *Indiana Cabinet* appeared to govern. We do not agree. It is a general rule that a court is bound by the law in effect at the time it decides a case. *Sobel v.* ' *Yeshiva Univ.,* 839 F.2d 18, 29–30 (2d Cir.1988), cert. denied, — U.S. —, 109 S.Ct. 3154, 104 L.Ed.2d 1018 (1989). In refusing to bargain with the Union, Superior ran the risk that the Board might later find, with the benefit of increased experience, a violation of the labor laws. And the result is not as unfair as Superior claims, because Superior always had it within its power to ask for an election to resolve the ambiguity raised by the employees' petition.

---

**3.** Superior submitted, in an appendix to its reply brief, what appears to be another petition received from its employees in October 1988.

## Conclusion

We conclude that the Board's findings that Julian was a statutory supervisor and that Superior did not have a good faith doubt of the Union's majority were supported by substantial evidence. We thus deny Superior's petition for review, and grant the Board's cross-application for enforcement.[3]

---

This petition was apparently not considered by the Board, and we express no opinion as to its significance, if any.