975 F.2d 40
 141 L.R.R.M. (BNA) 2257, 61 USLW 2220,
123 Lab.Cas. P 10,364
 UNITED FOOD AND COMMERCIAL WORKERS DISTRICT UNION LOCAL ONE,
AFL-CIO, Petitioner/Cross-Respondent,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent/Cross-Petitioner.
 Nos. 833, 993, Dockets 91-4142, 91-4160.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 27, 1992.
Decided Sept. 10, 1992.
 
 Gene M.J. Szuflita, New York City (Belson & Szuflita, of counsel), for petitioner/cross-respondent.
 Margaret G. Bezou, Atty., N.L.R.B., Washington, D.C. (Jerry M. Hunter, Gen. Counsel, D. Randall Frye, Acting Deputy Gen. Counsel, Aileen A. Armstrong, Deputy Associate Gen. Counsel, Howard E. Perlstein, Supervisory Atty., N.L.R.B., of counsel), for respondent/cross-petitioner.
 Before: WINTER, PRATT, and MAHONEY, Circuit Judges.
 MAHONEY, Circuit Judge:
 
 
 1
 United Food and Commercial Workers District Union Local One, AFL-CIO ("UFCW") petitions for review of an order of the National Labor Relations Board (the "NLRB" or "Board") dated August 28, 1991 that required UFCW to allow its members partially to revoke their authorizations for checkoff of dues. The NLRB cross-petitions for enforcement of its order.
 
 
 2
 We conclude that: (1) the NLRB properly determined that a union member's right to a partial checkoff is protected by the pertinent provisions of the National Labor Relations Act ("NLRA") on the facts presented in this case; and (2) the NLRB's underlying factual findings concerning the impact of partial checkoffs on union administration in this case are supported by substantial evidence. We accordingly deny UFCW's petition and enforce the Board's order.
 
 Background
 
 3
 UFCW is headquartered in Utica, New York. It has approximately 40,000 members who work for over 400 employers. One such employer, with whom UFCW has a collective bargaining agreement, is Big V Supermarkets, Inc. ("Big V").
 
 
 4
 UFCW's membership is apparently subject to considerable turnover. To facilitate dues collection, UFCW uses a "checkoff" system that requires the cooperation of employers. An employee who applies for union membership is given the opportunity voluntarily to authorize the automatic deduction from his paycheck of union initiation fees, dues, and assessments. The authorization form provided by UFCW for this purpose reads:
 
 
 5
 I hereby authorize my employer to deduct in whole or in part from my earnings each week or month all union initiation fees, dues and assessments for which I may be indebted to District Union Local One of the U.F.C.W. Int'l Union.
 
 
 6
 If an employee authorizes payment of union initiation fees, dues, and assessments by checkoff, this information is provided to the employer, which then deducts the dues from the employee's paycheck and remits them to UFCW. Alternatively, dues may be paid directly to the member by UFCW.
 
 
 7
 The collective bargaining agreement between Big V and UFCW (the "Agreement") provides for a "union shop," requiring that nonmanagement Big V employees in thirty-three specified upstate New York counties must become dues-paying members of UFCW within thirty-one days of commencing employment. The Agreement also makes provision for dues checkoff, as follows:
 
 
 8
 Upon receipt of proper written authorization from any employee, [Big V] agrees to deduct from the wages of said employee dues, initiation fees and assessments as listed by [UFCW], in duplicate schedules, which will be furnished to [Big V] during the week preceding that in which the deduction is to be made. It is understood that any authorization for payroll deduction shall be voluntary on the part of the employees and may be cancelled at yearly intervals or at the termination date of this Agreement.
 
 
 9
 In an effort to strengthen itself, UFCW launched an "Organizing Defense Campaign" (the "ODC") in early 1988. As described in UFCW literature, the ODC consisted of various strategies to organize employees of nonunion businesses and support the current membership, including a media campaign, demonstrations, boycotts, and research and investigation of issues affecting the union. To finance the ODC, UFCW's leadership proposed that each union member contribute one hour's pay each month. On March 28, 1988, the membership voted 3,983 to 2,207 in support of this proposal.
 
 
 10
 Because both the checkoff authorization form signed by UFCW members and the pertinent provision of the Agreement provide for withholding of union dues, initiation fees, and assessments, the checkoff system was available for the new ODC payments, however characterized. The use of the checkoff system for these payments is more complex, however, because the payments vary with the hourly wage of each employee and are collected only one week every month, whereas union dues are set at a single amount for every permanent and part-time worker and are withheld every week.
 
 
 11
 This appeal centers around the insistence of one UFCW member and Big V employee, Marshall Malysz, that his ODC payments not be deducted from his paycheck. On April 22, 1988, Malysz wrote Big V requesting that additional deductions from his paycheck not be taken without additional authorization. Also, nineteen employees of Big V signed a petition expressing a similar position and making specific reference to the ODC payments. Big V forwarded the letter and petition to UFCW. Both Big V and the Union rejected the requests contained in the letter and petition. Accordingly, Big V has continued to make the ODC deductions with respect to these employees.
 
 
 12
 UFCW rejected the members' request because it allegedly has no system in place for a "partial" checkoff. Specifically, UFCW asserts in its appeal brief (record citations omitted):
 
 
 13
 [O]ne year into the ODC the Union was still in the process of revising its systems and ... it relied upon the honesty of its members while the revisions were being made.... [I]f the Union were required to accept partial payments of dues, it would have to again rewrite its systems and cram at least another twenty-five workers into an already crowded room.
 
 
 14
 Nor would this difficulty be confined to the Union. Employers making dues deductions would also have to rewrite their payroll and computer systems. This would involve a ten step process which would take 5 to 6 weeks for each change.
 
 
 15
 On July 25, 1988, Malysz filed an unfair labor practice charge with the NLRB, alleging that unauthorized ODC deductions violated his rights under Section 7 of the NLRA, 29 U.S.C. § 157 (1988). UFCW answered on October 18, 1988, asserting that regulation of the checkoff system was an internal union matter and federal labor law imposed no obligation upon the union to honor Malysz' request.
 
 
 16
 Following a hearing on February 23, 1989, Administrative Law Judge Raymond P. Green (the "ALJ") ruled in favor of UFCW in a written decision dated April 14, 1989. The ALJ concluded that the ODC payments constituted additional dues, rather than an assessment. He also found that a requirement that a union honor partial revocations of dues checkoff authorizations "could result in undermining the utility of these authorizations" and would impose an "onerous" administrative burden upon the union. The NLRB's general counsel took exception to the ALJ's ruling and appealed to the Board.
 
 
 17
 In a decision and order dated August 28, 1991, 304 N.L.R.B. No. 49, 138 L.R.R.M. (BNA) 1346, the Board reversed the ALJ's ruling. The Board did not resolve the issue whether the ODC payments constituted additional dues or assessments, noting that in either event the payments constituted "a clearly separable part of employee/member financial obligations," with the result that UFCW "is hardly in a position to complain that it will suffer a heavy burden if it must separate [the ODC payments] out from [regular] dues payments for purposes of the mechanics of collection." 304 N.L.R.B. No. 49 at 4, 138 L.R.R.M. at 1347. The Board summarized its legal analysis in these terms:
 
 
 18
 Because we see nothing in the checkoff authorization signed by the unit employees that clearly forbids the partial revocations at issue here, and because we cannot agree that requiring the Respondent to honor those revocations is so destabilizing as to be at odds with the checkoff scheme authorized by Congress in Section 302(c)(4) of the Taft-Hartley Act, we find that [UFCW] violated Section 8(b)(1)(A) by refusing to honor them.
 
 
 19
 Id. (footnote omitted).
 
 
 20
 UFCW then petitioned this court for review of the NLRB order, and the NLRB cross-petitioned for its enforcement.Discussion
 
 UFCW advances two arguments on appeal:
 
 21
 (1) UFCW did not violate the NLRA by refusing to allow a partial revocation of checkoffs because partial revocations would frustrate the orderly collection of dues; and
 
 
 22
 (2) the NLRB's conclusion that the UFCW will not be burdened by partial payments of dues is unsupported by substantial evidence.
 
 
 23
 We address these contentions in turn.
 
 
 24
 A. The Mandate of the NLRA.
 
 
 25
 The NLRB ruled that UFCW violated section 8(b)(1)(A) of the NLRA, 29 U.S.C. § 158(b)(1)(A) (1988), by refusing to permit partial revocations of checkoffs. UFCW disagrees, arguing that it is permitted to enforce an "all or nothing" rule for checkoff revocations. We need not consider whether UFCW could impose such a rule, but address only the legal implications of the checkoff authorization system that the union has in fact utilized.
 
 
 26
 Section 302 of the NLRA permits a union to collect dues through a checkoff system,
 
 
 27
 Provided, That the employer has received from each employee, on whose account such deductions are made, a written assignment which shall not be irrevocable for a period of more than one year, or beyond the termination date of the applicable collective agreement, whichever occurs sooner.
 
 
 28
 29 U.S.C. § 186(c)(4) (1988).
 
 Section 7 of the NLRA provides:
 
 29
 Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title.
 
 
 30
 29 U.S.C. § 157 (1988) (emphasis added).
 
 
 31
 Section 8(b) of the NLRA provides in pertinent part:
 
 
 32
 It shall be an unfair labor practice for a labor organization or its agents--
 
 
 33
 (1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 157 of this title: Provided, That this paragraph shall not impair the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership therein.
 
 
 34
 29 U.S.C. § 158(b)(1)(A) (1988).
 
 
 35
 In finding a violation by UFCW[1] of § 158(b)(1)(A), the NLRB apparently concluded that UFCW members retained the right to partially revoke checkoff authorizations, i.e., to "refrain" from "assist[ing]" the union in this respect pursuant to § 157, and that § 158(b)(1)(A) barred the UFCW from coercing its members with respect to this election.
 
 
 36
 This court's " 'role in reviewing a decision of the [NLRB] is a limited one.' " Superior Bakery, Inc. v. NLRB, 893 F.2d 493, 496 (2d Cir.1990) (quoting NLRB v. Cooper Union for the Advancement of Science & Art, 783 F.2d 29, 31 (2d Cir.) (per curiam), cert. denied, 479 U.S. 815, 107 S.Ct. 70, 93 L.Ed.2d 27 (1986)). The premise for this restraint has been made clear by the Supreme Court:
 
 
 37
 This Court has emphasized often that the NLRB has the primary responsibility for developing and applying national labor policy. See, e.g., Beth Israel Hospital v. NLRB, 437 U.S. 483, 500-501 [, 98 S.Ct. 2463, 2473, 57 L.Ed.2d 370] (1978); NLRB v. Erie Resistor Corp., 373 U.S. 221, 236 [, 83 S.Ct. 1139, 1149, 10 L.Ed.2d 308] (1963); NLRB v. Truck Drivers, 353 U.S. 87, 96 [, 77 S.Ct. 643, 647, 1 L.Ed.2d 676] (1957).
 
 
 38
 NLRB v. Curtin Matheson Scientific, Inc., 494 U.S. 775, 786, 110 S.Ct. 1542, 1549, 108 L.Ed.2d 801 (1990). We accordingly review the Board's ruling in this case with considerable deference.
 
 
 39
 Checkoff authorizations must be voluntary. Armco, Inc. v. NLRB, 832 F.2d 357, 364 (6th Cir.1987) (citing NLRB v. Atlanta Printing Specialties & Paper Prods. Union 527, 523 F.2d 783, 787 (5th Cir.1975)), cert. denied, 486 U.S. 1042, 108 S.Ct. 2034, 100 L.Ed.2d 619 (1988). Any limits on their revocability must therefore be expressed in the authorization agreement. Cameron Iron Works, Inc., 235 N.L.R.B. 287, 289 (1978), enforcement denied on other grounds, 591 F.2d 1 (5th Cir.1979) (per curiam). Thus, the absence of a limit on revocability indicates that authorizations are revocable at will. Trico Prods. Corp., 238 N.L.R.B. 1306, 1309 (1978). In this case, the checkoff authorization signed by Malysz contains no express limit on revocability. It follows that he was free to revoke his checkoff authorization at will.
 
 
 40
 The question presented here is whether he could partially revoke his authorization with respect only to the ODC payments. The checkoff authorization form provided by UFCW to its members supports an affirmative resolution of that question, for it empowers an employer to make the specified deductions "in whole or in part from my earnings each week or month," indicating that an authorizing employee may make provision for a partial checkoff either initially or by subsequent revocation. In any event, as the Board noted, "nothing in the checkoff authorization signed by the unit employees ... clearly forbids the partial revocations at issue here." 304 N.L.R.B. No. 49 at 4, 138 L.R.R.M. at 1347.
 
 
 41
 UFCW contests this view, however, pointing to testimony by a union accountant that the "in whole or in part" language of the authorization was intended only to allow initiation fees to be deducted in installments, and dues to be deducted weekly rather than monthly. Nonetheless, the issue is what an employee has voluntarily authorized. An understanding of the authorization form by a UFCW functionary that is not apparent from the plain language of the form provides little assistance to the resolution of that inquiry.
 
 
 42
 B. The NLRB's Determination as to Administrative Burden.
 
 
 43
 UFCW contends, in substance, that a ruling in favor of Malysz will "have a widespread disruptive effect on existing dues-checkoff arrangements or place undue burdens on [UFCW and Big V]." International Bhd. of Elec. Workers, Local No. 2088 (Lockheed Space Operations Co.), 302 N.L.R.B. No. 49, at 23, 136 L.R.R.M. (BNA) 1321, 1329 (Mar. 29, 1991). See generally Associated Builders & Contractors v. Carpenters Vacation & Holiday Trust Fund, 700 F.2d 1269, 1277 (9th Cir.) ("The dues checkoff procedure of section 302(c)(4) is designed to ensure not only the 'protection of the employee' but also administrative convenience in the collection of dues.") (citing Anheuser-Busch, Inc. v. International Bhd. of Teamsters, Local 822, 584 F.2d 41, 43 (4th Cir.1978); Atlanta Printing Specialties, 523 F.2d at 786), cert. denied, 464 U.S. 825, 104 S.Ct. 94, 78 L.Ed.2d 101 (1983). UFCW maintains that the Board's determination as to administrative burden in this case is unsupported by substantial evidence.
 
 
 44
 This court's power to review the NLRB's factual findings is limited. The relevant statute specifies that "the findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall ... be conclusive." 29 U.S.C. § 160(f) (1988); see also NLRB v. Glover Bottled Gas Corp., 905 F.2d 681, 684 (2d Cir.1990) (citing Erie Resistor Corp., 373 U.S. at 236, 83 S.Ct. at 1150; NLRB v. S.E. Nichols, Inc., 862 F.2d 952, 956 (2d Cir.1988), cert. denied, 490 U.S. 1108, 109 S.Ct. 3162, 104 L.Ed.2d 1025 (1989)).
 
 
 45
 The Board's order in this case is based upon evidence in the record, including UFCW's own submissions, which indicates that the ODC payments are separate and apart from regular union dues, and therefore are conveniently distinguished for checkoff and collection purposes. As the Board stated:[W]e see no necessity, given the facts of this case, for opening the door to the chaos feared by the [ALJ]. As [UFCW's] own letter [explaining the ODC deduction to employers] makes clear, [UFCW] envisioned the ODC payment as a distinct payment that called for its own separate deduction "system." It was termed an "assessment"; it was to be deducted during 1 week of the month (as opposed to the weekly dues deductions); the amount for each employee was to be based on what he would earn in 1 hour (as opposed to the fixed amounts for dues deductions); and it had its own separate column on the pay statement. [UFCW's] checkoff-billing statements sent to employers also treated it separately. Having defined the ODC payment as a clearly separable part of employee/member financial obligations, [UFCW] is hardly in a position to complain that it will suffer a heavy burden if it must separate it out from dues payments for purposes of the mechanics of collection.
 
 
 46
 304 N.L.R.B. No. 49 at 3-4, 138 L.R.R.M. at 1347.
 
 
 47
 We find this analysis persuasive. In any event, it is surely supported by substantial record evidence, and we therefore have no basis for overturning it. UFCW's hyperbolic speculations regarding the burdens that will result from partial checkoff revocations as to ODC payments, on the other hand, find little support in the record.
 
 
 48
 UFCW contends that "if the Union were required to accept partial payment of dues, it would have to again rewrite its systems and cram at least another twenty-five workers into an already crowded room." This grim scenario, however, is premised upon testimony as to the impact of "40,000 members ... hav[ing] the ability to say to [UFCW] I only want part of my dues to be deducted by check-off and the rest I'll do some other way...." The record evidence in this case, however, is that only twenty union members have requested a partial checkoff revocation, and only as to the separable ODC payments.
 
 
 49
 A showing of a major administrative burden would certainly change the equities, if not the outcome, in this case. The touchstone is still the scope of the employee's voluntary authorization. On the other hand, bearing in mind the practical obstacles to obtaining fresh authorizations from a unionwide membership, there is room for practical accommodation in checkoff systems designed to facilitate the convenience of all concerned parties. See Associated Builders & Contractors, 700 F.2d at 1277. In any event, there is no occasion for any such reconciliation here, because no showing of significant administrative burden has been made.
 
 Conclusion
 
 50
 UFCW's petition for review is denied and the NLRB's cross-petition for enforcement of its order is granted.
 
 
 
 [1]
 As the ALJ noted in his opinion, no unfair labor practice charge was filed against Big V pursuant to 29 U.S.C. § 158(a)(1) or (2) (1988)