**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0129n.06
Filed: February 12, 2009

**No. 08-1892**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| NATIONAL LABOR RELATIONS BOARD, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | ON PETITION FOR ENFORCEMENT |
| SOLARTEC, INC., AND SEKELY | ) | OF AN ORDER OF THE NATIONAL |
| INDUSTRIES, INC., | ) | LABOR RELATIONS BOARD |
| | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

Before: DAUGHTREY, ROGERS, and KETHLEDGE, Circuit Judges.

**PER CURIAM.** The National Labor Relations Board seeks enforcement of a Board order awarding back pay by respondent Solartec, Inc.,[1] to Robert Stallsmith, who the Board found had been discharged in violation of Sections 8(a)(1) and 8(a)(3) of the National Labor Relations Act. Due to the length of time that has elapsed since Stallsmith's termination and the original Board hearing, and given Stallsmith's advanced

---

[1]A stipulation entered into by the parties defers the issue of whether Solartec, Inc., and Sekely Industries, Inc., constitute a single employer. See Solartec, Inc., 352 N.L.R.B. 331, 332 (2008). Thus, this issue is not before the Court. Sekely Industries ceased operations in early 2007. Brief of Respondent-Appellant at 3.

age, we granted expedited review of this case on motion from the Board. For the reasons set out below, we order enforcement of the Board's order.

Robert Stallsmith was a employed as a large-machine department leader at Solartec's production facility in Salem, Ohio, which manufactured stamping dies used in the automobile industry. He was discharged on July 10, 2000, in retaliation for his support of an organizing drive conducted by the United Automobile, Aerospace, and Agricultural Implement Workers of America (UAW), Region 2B. Because the employer conceded that Stallsmith was fired for his union sympathy, the question addressed by the administrative law judge was whether or not Stallsmith was a managerial employee. If Stallsmith were a managerial employee, as the employer contends, the company was "at liberty to demand absolute loyalty" from him in an organizing drive and, thus, was free to discharge him for his union support. See Florida Power & Light Co. v. IBEW, 417 U.S. 790, 812 (1974). However, if Stallsmith were a non-managerial employee, his discharge violated sections 8(a)(1) and 8(a)(3) of the National Labor Relations Act, which makes it an unfair labor practice to "interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title," or to discourage union membership "by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization." 29 U.S.C. §§ 158(a)(1), (a)(3).

The administrative law judge concluded that Stallsmith was a non-managerial employee and therefore entitled to the make-whole remedy of reinstatement and back pay. This opinion and order was adopted by the National Labor Relations Board. As a reviewing court, we review the Board's conclusions of law *de novo*. See 3750 Orange Place Ltd. P'ship v. NLRB, 333 F.3d 646, 654 (6th Cir. 2003). We will uphold the Board's findings of fact if supported by "substantial evidence on the record considered as a whole." See 29 U.S.C. §§ 160(e) and (f); see also Conley v. NLRB, 520 F.3d 629, 638 (6th Cir. 2008). The "substantial evidence" standard means that we defer to the Board if the evidence it relied upon is "adequate, in a reasonable mind, to uphold the decision." NLRB v. Gen. Fabrications Corp., 222 F.3d 218, 225 (6th Cir. 2000). Because determination of whether or not an employee is managerial is an "intensive fact-based analyses," see NLRB v. Cooper Union for the Advancement of Science & Art, 783 F.2d 29,31 (2d Cir. 1986), on a matter that is within the Board's special expertise, we will not "displace the Board's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo*." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951).

Before the administrative law judge, the employer advanced two arguments to support its contention that Stallsmith was a managerial employee: (1) Stallsmith's role in ordering and testing tools needed in his department, and (2) his supposed alignment with management, as well as perception on the shop floor that he was the "right hand man" of Machine Superintendent Tom Furlong. See Solartec, Inc., 352 N.L.R.B. 331, 333 (2008).

Regarding the ordering and testing of tools, the evidence presented at the hearing established that Stallsmith's duties included making routine purchases of tools, testing tools that were not purchased routinely, and conveying price quotes to management when tool salesmen visited the shop. The administrative law judge noted that Stallsmith's discretion was circumscribed in these duties. For instance, Stallsmith's routine orders for tools in the "blanket order book" were reviewed by the large-machine superintendent, and Stallsmith was not among the employees authorized to place orders without a written purchase order. See id. at 335. Stallsmith also referred price quotes for new tools to management and, when instructed to do so by management, asked certain tool salespeople for better prices. However, he denied being "involved in any price haggling" or in the selection of vendors or adjusting of disputes with vendors. See id. at 334. Stallsmith testified that he had to seek approval of a supervisor for his purchase orders and that he was not aware of the company's budget and did not attend meetings where the company's budget or purchasing policies were formulated. Based on these facts, the administrative law judge distinguished Stallsmith's duties from those of a buyer in Concepts and Designs, Inc., 318 N.L.R.B. 948 (1995), where the buyer's discretion to make purchases was not reviewed by others in the company, the buyer attended weekly management meetings, and the buyer was the sole representative of the company to meet with vendors. Accordingly, the administrative law judge concluded that Stallsmith's limited involvement in ordering tools did not make him a managerial employee.

In considering whether or not Stallsmith was aligned with management, the administrative law judge considered two main items of evidence: a job description signed by Stallsmith in June 2000, and the testimony of a machinist who worked with Stallsman. The job description was presented to Stallsmith by the company's labor consultant after management was made aware of the UAW's organizing drive. Solartec, Inc., 352 N.L.R.B. at 338. Stallsmith, who recorded the meeting with the labor consultant, objected to the description of his duties and questioned why he was being asked to sign the document at that time. The labor consultant admitted to Stallsmith that the document had been drawn up with the intent to make Stallsmith a supervisor under Section 2(11) of the National Labor Relations Act. Stallsmith signed the document but denied ever performing many of the functions listed in the job description, such as disciplining employees and training newly hired machinists.

The administrative law judge also heard testimony from a machinist that Stallsmith was "supposed to be the guy in charge" and was the "right-hand man" of the machine superintendent. See id. at 341. Despite this, the administrative law judge concluded that the machinist's testimony "concerning Stallsmith's day-to-day interaction with him and the other machinists is not indicative of managerial status," when viewed under all the circumstances. See id. The administrative law judge also questioned the machinist's ability to be an "impartial and objective witness" because he described a workplace incident that led to him becoming angry with Stallsmith. See id. at 341-42. Considering the circumstances under which Stallsmith signed the job description and the adverse credibility

finding regarding the machinist's testimony, the administrative law judge concluded that Stallsmith was not aligned with management and, thus, not a managerial employee in the meaning of section 2(11) of the Act.

As we have previously held, we "ordinarily will not disturb credibility evaluations by an ALJ who observed the witnesses' demeanor." Vencare Ancillary Servs., Inc. v. NLRB, 352 F.3d 318, 321 (6th Cir. 2003). In this case, the administrative law judge credited Stallsmith's testimony, noting that "his overall testimony was consistent," despite the seven years that had elapsed. She also was entitled to draw an adverse inference regarding the failure to present testimony from the company officials with firsthand knowledge of Stallsmith's purchasing activities and job duties, such as the large-machine superintendent or purchasing agent. See Solartec, Inc., 352 N.L.R.B. at 343 ("The failure to call a witness whose testimony would reasonably be presumed to favor a party warrants an adverse inference that had the individual been called as a witness, his testimony would not have supported the party's position."); see also DMI Distribution of Delaware, Ohio, 334 N.L.R.B. 409, 412 (2001); Int'l Assn of Bridge Workers Local 118 (California Erectors), 309 N.L.R.B. 808, 811 (1992). Because the administrative law judge's finding that Stallsmith was not a managerial employee was supported by specific testimony and reasonable inferences drawn from that testimony, we conclude that it was supported by substantial evidence on the record as a whole.

For the reasons set out above, we GRANT the Board's application for enforcement

of its order.