IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 98-20416
_____

MICHAEL WILLIAM MADDEN, Individually and as Next
Friend of John Michael Madden, A Minor,

Plaintiff-Appellant,

v.

NATIONAL CENTER FOR MISSING AND EXPLOITED CHILDREN;
ET AL,

Defendants,

NATIONAL CENTER FOR MISSING AND EXPLOITED CHILDREN;
ELIZABETH F YORE,

Defendants-Appellees.
_____

Appeal from the United States District Court
for the Southern District of Texas
(H-96-CV-3683)
_____

May 25, 1999

Before KING, Chief Judge, REAVLEY and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

    Plaintiff-appellant Michael William Madden, suing
individually and as next friend of his minor son John Michael
Madden, brought this negligence action against defendants-
appellees the National Center for Missing and Exploited Children
and Elizabeth F. Yore, director of its international division.

---

    [*]Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Madden now appeals the district court's dismissal, pursuant to Federal Rule of Civil Procedure 12(b)(6), of his claim. We construe the district court's order as granting summary judgment and affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In April 1988, plaintiff-appellant Michael William Madden and Kathryn Banks, both United States citizens, were divorced in the state of Quintana Roo in the Republic of Mexico. A custody decree awarded Banks, then a resident of New Braunfels, Texas, custody of the couple's minor son, John Michael Madden ("Johnny"), during the school year. In October 1988, Johnny took up residence with his father in Cancun, Quintana Roo, Mexico. The parties disagree as to how he came to live with Madden. Banks claims that Madden took Johnny from her home in Comal County, Texas, and failed to return him to her; Madden alleges that Banks told him that she was moving to Argentina and voluntarily left Johnny with him. In February 1989, Madden filed a motion for modification of custody with the court of continuing jurisdiction in Quintana Roo, which resulted in his obtaining sole custody of Johnny in January 1990. Madden alleges that Banks's attorneys appeared before the Mexican court and that she was made aware of the modification. Banks contends that she was never served with Madden's motion for modification, did not receive notice of the modification hearing, and did not appear at the hearing. In addition, Banks claims that from 1989 to 1996, she made repeated unsuccessful inquiries as to her son's

whereabouts. Madden disputes this, maintaining that although he and Johnny remained at their residence in Cancun, Banks made no attempt to locate or visit Johnny, although she did send six letters or postcards.

In early 1996, Banks and Madden communicated, and Madden agreed to meet Banks in Washington, D.C. so that Banks could see Johnny. Banks then contacted United States Senator Joseph Biden seeking assistance in regaining possession of Johnny. Senator Biden referred Banks to the National Center for Missing and Exploited Children ("Center" or "NCMEC"), a congressionally-created clearinghouse for information regarding missing children and source of technical assistance for law enforcement and certain public and private agencies.[1]

The parties dispute what actions the Center took on Banks's behalf. According to the Center, it advised Banks (1) about

---

[1] The Missing Children Assistance Act of 1984, 42 U.S.C. §§ 5771-5778, required the Administrator of the Office of Juvenile Justice and Delinquency Prevention to "establish and operate a national 24-hour toll-free telephone line by which individuals may report information regarding the location of any missing child . . . and request information pertaining to procedures necessary to reunite such child with such child's legal custodian," id. § 5773(b)(1)(A), "provide for the furnishing of information derived from the national toll-free telephone line . . . to appropriate entities," id. § 5773(a)(3), and "establish and operate a national resource center and clearinghouse," id. § 5773(b)(2), that would, among other things, "coordinate public and private programs which locate, recover, or reunite missing children with their legal custodians," id. § 5773(b)(2)(B), and "provide technical assistance and training to law enforcement agencies," id. § 5773(b)(2)(D). In addition, the National Child Search Assistance Act of 1990 requires state law enforcement agencies to "maintain close liaison with the National Center for Missing and Exploited Children for the exchange of information and technical assistance in the missing children cases." 42 U.S.C. § 5780(3)(C).

applicable laws governing missing children; (2) to translate and file the April 1988 custody order in Delaware, the state of her residence; (3) to contact law enforcement authorities to request that an arrest warrant be issued for Madden; and (4) to request that the warrant be reported to the National Crime Information Center (NCIC). The Center also claims that it told Banks that because Mexico was not yet a signatory to the Hague Convention at the time Johnny was allegedly taken from her, she should seek help through the Texas criminal justice system. Banks provided the Center with a copy of the 1988 Mexican child custody order and informed it that she had contacted local law enforcement authorities in Comal County, Texas. The Center then called these authorities several times to check on the status of Madden's arrest warrant. Madden characterizes the Center's actions somewhat differently: He claims that it "persuaded and convinced" Comal County authorities to "file the felony charge of intentional interference with child custody." This "active advocacy" of Banks's custodial rights, Madden alleges, went beyond the Center's congressionally-mandated duties.

In the spring of 1996, an Interpol special agent informed the Center that Interpol had been in contact with the local Texas district attorney and law enforcement personnel in an effort to secure a warrant for Madden's arrest. A warrant was in fact issued on April 30, 1996. Madden was arrested in May 1996 as he attempted to enter the United States, charged with interference

4

with child custody, and jailed in Houston, Texas. Johnny was returned to Banks.

After his arrest, Madden initiated a proceeding in Delaware state court seeking Johnny's return. He presented a copy of the 1990 custody modification order and the testimony of the attorney who represented him in the 1990 modification proceedings. After determining that it had no jurisdiction to disturb a foreign court order in light of evidence that Banks appeared to have notice of the modification proceeding, the Delaware court declined to review the custody modification order and directed that Johnny be returned to Madden. Madden and Johnny immediately left the United States and, to date, Johnny remains with his father in Mexico.

In October 1996, Madden filed suit against the Center and Banks in Texas state court on a number of causes of action, including common law negligence. The Center and Banks removed the case to the United States District Court for the Southern District of Texas on the basis of diversity of citizenship and filed motions to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Madden failed to respond, and the district court entered an order granting the motions to dismiss. Subsequently, Madden filed a motion for leave to file a response to the motions to dismiss, a motion for reconsideration of the dismissal order, and motions for leave to file first and second amended complaints. The district court granted leave to file a response to the motion to dismiss,

granted leave to file a first amended complaint insofar as Madden sought to dismiss certain claims against Banks,[2] and denied leave to file a second amended complaint. The motion for reconsideration was granted in part and denied in part; the district court reinstated certain claims against Banks but ordered that the negligence claim against the Center remain dismissed because the Center had no duty to investigate foreign orders before becoming involved in actions relating to the custody of a child. Madden appealed.

## II. STANDARD OF REVIEW

Where matters outside the pleadings are "presented to and not excluded by the court" and the district court grants a motion styled as a motion to dismiss, we treat that order as an order granting summary judgment. FED. R. CIV. P. 12(b); see Baker v. Putnal, 75 F.3d 190, 197 (5th Cir. 1996); Baton Rouge Bldg. & Constr. Trades Council v. Jacobs Constructors, Inc., 804 F.2d 879, 881 (5th Cir. 1986) (per curiam). In this case, the Center included matters outside the pleadings in its motion to dismiss, and the district court considered the material in its order

---

[2] The district court also implicitly granted the motion for leave to file a first amended complaint insofar as it sought to drop all claims against the Center except the negligence claim. The district court stated in its order that because Madden apparently wished to pursue only the negligence cause of action, it would address only that claim against the Center. The court explicitly denied Madden's request to add Elizabeth F. Yore, director of the Center's international division, as a defendant. It is unclear why Yore is listed as a defendant-appellee in the style of this case.

dismissing Madden's claim.[3]  In so doing, the court converted the

motion to dismiss into a motion for summary judgment under

Federal Rule of Civil Procedure 56.  See FED. R. CIV. P. 56;

Washington v. Allstate Ins. Co., 901 F.2d 1281, 1284 (5th Cir.

1990).

Before reviewing the district court's disposition of

Madden's claim as a grant of summary judgment, however, we must

first determine whether Madden was afforded the procedural

protections of Rule 56.  See Washington, 901 F.2d at 1284.  Under

Rule 56(c), after the court accepts matters outside the

pleadings, the non-movant must have ten days' notice to respond

and submit additional evidence.  See FED. R. CIV. P. 56(c);

Washington, 901 F.2d at 1284.  After reviewing the record, we

conclude that Madden had proper notice under Rule 56(c).  The

Center filed its motion to dismiss on November 26, 1996.  Madden

failed to respond within twenty days, as required by Southern

District of Texas Local Rule 6(d), and the district court granted

the motion on February 18, 1997.  Madden filed a motion for leave

to file a response to the Center's motion to dismiss and the

---

[3]  For example, the Center attached to its motion to dismiss Yore's affidavit, which asserts that "[s]tatistics maintained by the Center reflect that since 1984 we have received over one million calls with requests for assistance . . . ."  The district court's order stated:  "The evidence indicates that since its creation, the NCMEC has received millions of calls with requests for assistance in finding children.  Should this Court, or any other court, impose a legal duty on the NCMEC to conduct investigations into foreign court proceedings and to take action 'through diplomatic channels' as advocated by Madden, prior to acting on incoming calls for assistance, the NCMEC would lose its ability to effectively perform its designated functions."

response itself on February 21, 1997, and a motion for reconsideration of the district court's dismissal order on February 27, 1997. The district court did not rule on the motions until May 8, 1997. We think it apparent that Madden had sufficient notice that the court could treat the motion to dismiss as a motion for summary judgment.

We review a grant of summary judgment de novo, applying the same standards as the district court. See United States v. Johnson, 160 F.3d 1061, 1063 (5th Cir. 1998). After consulting applicable law in order to ascertain the material factual issues, we consider the evidence bearing on those issues, viewing the facts and the inferences to be drawn therefrom in the light most favorable to the non-moving party. See King v. Chide, 974 F.2d 653, 656 (5th Cir. 1992). Summary judgment is properly granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See FED. R. CIV. P. 56(c).

### III. DISCUSSION

We begin by summarizing Madden's claim. In his original petition, the live pleading with respect to the negligence claim in this case, Madden asserts that "DEFENDANT CENTER owed the PLAINTIFF and members of the public similarly situated as the PLAINTIFF, a duty to investigate before becoming involved in any action relating to the custody of a child." According to the

petition, the Center "encouraged and assisted" Banks in obtaining physical custody of Johnny, instructed Banks to contact Madden, contacted Comal County authorities and "convinced" them to issue a warrant for Madden's arrest, and obtained a copy of Madden's itinerary from Banks.

In his brief on appeal, Madden argues that the Center "did more than communicate the limited information it possessed regarding BANKS' custody allegation" because it "lent its reputation to BANKS and actively persuaded law enforcement to act erroneously" and that the Center has a duty to "reasonably verify claims of custody and abduction before actively acting as an advocate" in a missing-child case. Similarly, Madden's reply brief states that "MADDEN asks not that the CENTER investigate every case before passing information to law enforcement, MADDEN merely asks that the CENTER face the consequences of failing to act reasonably before actively advocating one parent's right to custody of a child over the rights of the other parent."

At oral argument, Madden's counsel conceded that his client would have no claim if the Center had merely "neutrally convey[ed] information," but argued that the Center should have investigated Banks's allegations before "persuad[ing] and convinc[ing] law enforcement to act when it would not have otherwise acted so."[4]   We find, however, that there is no

_____

    [4]  At the beginning of oral argument, counsel stated, "Clearly, if all that the Center's doing is conveying information, they're not going to be subject to any liability." Later, the following colloquy ensued:

genuine issue of material fact as to whether the Center did anything more than act as a neutral information clearinghouse. The Center's motion to dismiss included an affidavit from Yore stating that it merely advised Banks as to how she could regain possession of her son, contacted Comal County authorities to check on the status of her request for an arrest warrant, and helped coordinate the efforts of local officials, Interpol, and the United States Customs Service to investigate the Banks-Madden matter. Madden's only evidence that the Center did anything more is an affidavit from his attorney describing an undated memorandum from Yore.[5] This memorandum, counsel's affidavit asserts, states that the Center "'persuaded' the local police department to enter the child in NCIC" and "'convinced the local law enforcement to file felony charges against Plaintiff Madden." Madden did not submit Yore's memorandum itself to the district court.

We cannot consider counsel's description of the undated Yore memorandum. Federal Rule of Civil Procedure 56(e) provides that

THE COURT: Are you saying that if all that had happened here was that they had acted as a clearinghouse that you wouldn't have a case?
COUNSEL: Yes, ma'am.
THE COURT: You are saying that?
COUNSEL: I concede that, yes ma'am.
THE COURT: Okay.

[5] The memorandum was part of a mediation notebook belonging to the National Broadcasting Company (NBC), whom Madden sued for defamation after one of its Philadelphia affiliates broadcast an interview with Banks, and was faxed to Madden's attorney during settlement negotiations. At oral argument, counsel stated that he was in possession of the memorandum but had not produced it because of an agreement with NBC.

"[s]worn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith." "This means that if written documents are relied upon they actually must be exhibited; affidavits that purport to describe a document's substance or an interpretation of its contents are insufficient." 10A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 2722, at 380-81 (1998); see Doddy v. Oxy USA, Inc., 101 F.3d 448, 462-63 (5th Cir. 1996) (noting that Rule 56(e) requires that sworn or certified copies of papers referred to in an affidavit be attached thereto, but determining that the rule was not violated where the affidavit in question did not refer to any document); see also Friedel v. City of Madison, 832 F.2d 965, 970 (7th Cir. 1987) (reaffirming Rule 56(e)'s requirement that copies of papers referred to in an affidavit be attached); Walling v. Fairmont Creamery Co., 139 F.3d 318, 322 (8th Cir. 1943) (noting that under Rule 56(e), "[w]hen written documents are relied on, they must be exhibited in full"). Without the benefit of Madden's counsel's description of Yore's memorandum, we conclude that there is no genuine issue of material fact as to whether the Center acted as anything other than a neutral information clearinghouse. This leaves Madden only with his claim that the Center was negligent in failing to investigate Banks's allegations before advising her and conveying her claims to law enforcement authorities, but he has already conceded that he cannot prevail on these allegations.

**IV.  CONCLUSION**

For the foregoing reasons, we AFFIRM the judgment of the district court.