**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**MEENAN OIL CO., L.P., Respondent,**

**No. 995, Docket 97–4200.**

United States Court of Appeals, Second Circuit.

Argued Jan. 8, 1998.

Decided March 4, 1998.

Joseph A. Oertel, Washington, DC (Frederick C. Havard, Supervisory Attorney,

Frederick L. Feinstein, General Counsel, Linda Sher, Associate General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, on brief), for Petitioner.

Thomas G. Dignan, Garden City, NY (Christopher J. Porzio, Nixon, Hargrave, Devans & Doyle, on brief), for Respondent.

Thomas M. Kennedy, New York City (Kennedy, Schwartz & Cure, of counsel) for Intervenor.

Before: FEINBERG, KEARSE and JACOBS, Circuit Judges.

JACOBS, Circuit Judge:

The National Labor Relations Board (the "Board") petitions for enforcement of its order finding that Meenan Oil Co., L.P. ("Meenan" or the "Company") violated Sections 8(a)(1) and (5) of the National Labor Relations Act (the "NLRA"), 29 U.S.C. § 158(a)(1) and (5), by refusing to bargain with a properly certified union and requiring Meenan (inter alia) to bargain with the union on demand. Meenan contends that the two collective-bargaining units at issue were improperly certified because they include employees who are outside the protection of the NLRA. Specifically, Meenan asserts that (1) its oil and service dispatchers are supervisors; (2) its administrator for payroll and personnel matters is a managerial as well as a confidential employee; and (3) the executive secretary to its general manager is a confidential employee. The Board argues that its findings are supported by substantial evidence.

We agree with the Board that substantial evidence supports its findings as to the oil and service dispatchers. But we agree with Meenan as to the confidential status of the payroll/personnel administrator and the executive secretary, because both of them have access to confidential portions of Meenan's profit plan that forecast the wages and salaries of the Company's employees and supervisors. This information, in the hands of the union, would give a substantial tactical advantage in negotiation. We therefore modify the order to remove these two positions from the roster of employees included in the Office Clerical collective-bargaining unit. The ex-

clusion of the ballots of these two employees, however, would not have affected the outcome of the union elections; so we enforce the remainder of the order as written.

## BACKGROUND

The following facts are supported by substantial evidence in the record.

### A. The Company

#### 1. *Operations and management*

Meenan sells fuel oil; installs boilers, air conditioners, and alarm systems; and services the boilers it installs. The Company, headquartered in Syosset, New York, operates out of a plant in Wantagh. Meenan employs more than 240 people during the peak heating oil season, which on Long Island runs from November to March. Local 463, International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers, AFL–CIO ("Local 463" or the "Union") prevailed in an election to represent office clerical workers and plant clerical workers at the Wantagh plant.

The senior Company officer at the Wantagh facility is the general manager, Richard Zaweski. Other managers at Wantagh run the Company's various departments (fleet and oil delivery; service; customer service; installation; sales and marketing; accounting; credit; and data processing), and report to the general manager. Zaweski testified that he is responsible for the Company's labor contract administration and that he makes all final decisions with respect to serious disciplinary actions.

#### 2. *The executive secretary*

Rosemary Gould is Zaweski's executive secretary. She sits outside his office and spends most of her time answering telephones, typing, filing, and performing other clerical tasks. She also opens Zaweski's mail, including items marked "confidential." Gould types documents dealing with employee discipline, including disciplinary notices, termination notices, minutes of union grievance meetings, and grievance settlement documents. Ordinarily, she prepares the docu-

ments after a decision has been made, and often after their contents have been disclosed to the relevant employees or union representatives, or discussed with them; copies are generally sent to the employees and union immediately after they are produced. Gould also types some internal memoranda dealing with various personnel issues. These memoranda give her access to intra-management communications that affect union employees generally, even if they do not specifically concern labor issues or strategies. Thus Gould is responsible for typing the Company's annual profit plan, which forecasts the salary increase or decrease planned for every Meenan employee. Meenan asserts that her access to all of these materials makes Gould a confidential employee, and that it was error to include her in a collective-bargaining unit.

### 3. The payroll/personnel administrator

Angela Gabriel, the Company's payroll/personnel administrator, had worked for the Company for about twelve years at the time of the election.

*a. Managerial status.* Gabriel reports to the Company's accounting supervisor on most matters, but reports to Zaweski on issues of personnel. Her primary responsibility is to handle the paperwork for payroll and personnel matters. Specifically, she:

— prepares the weekly payroll figures;

— collects personnel forms when new employees are hired;

— receives and files copies of insurance claims, disciplinary notices, and other notices;

— maintains a complete set of personnel files;

— calculates and fills out the forms for employees' benefit fund contributions;

— helps managers keep track of employees' absences and overtime, and is expected to point out any discrepancies she observes;

— fills out unemployment compensation forms using information provided by the Company's managers; and

— occasionally copies documents from an employee's file in order to assist a manager who is testifying at an unemployment hearing.

Meenan argues that these duties are those of a managerial employee, and that Gabriel consequently should be excluded from union membership.

*b. Confidential status.* Gabriel's duties give her access to potentially sensitive information about the Company. Copies of all employees' personnel files are filed in Gabriel's office. She receives employees' drug-test results, though she plays no role in deciding what to do about the results. Gabriel is privy to some union-related information (such as impending layoffs), but she generally acquires that information only when it is in the process of being forwarded to the union. Most important for present purposes, she assists Zaweski with the preparation of the Company's annual profit plan, and in that way has access to the current salary as well as salary changes forecast by the Company for all employees and supervisors, and at least some managers. Because she has access to all of this information, Meenan contends that Gabriel, like Gould, is a confidential employee who for that reason must be excluded from any bargaining unit.

### 4. The oil and service dispatchers

Meenan's two major lines of business are (i) the sale and delivery of fuel oil, and (ii) the installation and servicing of boilers. Meenan's oil-delivery department employs transport and delivery drivers and truck mechanics (approximately forty-one delivery drivers in peak season), who are assigned to particular routes and deliveries by the Company's three oil dispatchers. The service department employs up to 48 service mechanics in the peak season, whose work is coordinated by six dispatchers. Meenan maintains that both the oil and the service dispatchers are supervisors.

### B. The Representation Elections

Various groups of Meenan employees have been represented by unions for years. On April 11 and May 22, 1996, Local 463 filed a representation petition with the National Labor Relations Board, seeking to represent two additional units of Meenan employees,

one at the plant, the other at the corporate office.

The Union and the Company stipulated that a "Plant Clerical Unit" would include loading clerks, inventory clerks, and yardmen, and that an "Office Clerical Unit" would include Meenan's office clerks, sales representatives, and telemarketers. But at a hearing before Elizabeth Alexander, a Hearing Officer of the Board, Meenan and the Union renewed their contentions and arguments concerning the status of Zaweski's executive secretary; the payroll/personnel administrator; and the oil and service dispatchers. Meenan also moved to dismiss the petition on the related ground that payroll/personnel administrator Gabriel, as a managerial employee, had tainted Local 463's showing of interest by participating in its recruitment process and in the representation election.[1]

Regional Director Alvin Blyer issued a Decision and Direction of Election, dated July 25, 1996, finding (i) that the oil and service dispatchers are not supervisors because although they direct and assign work to other employees, they do not exercise independent judgment, a prerequisite for a finding of supervisory status under the NLRA; (ii) that Gabriel (the payroll/personnel supervisor) is not a managerial employee because she has no authority to act independently in formulating and effectuating management policy; and (iii) that neither Gabriel nor Gould is a confidential employee because neither had access to sensitive labor-related information that, if transmitted to the Union, would impair Meenan's negotiating position. All of these employees were therefore included in the bargaining units. As to Meenan's motion to dismiss the petition on the basis of Gabriel's involvement in the Union's recruitment process, the Regional Director ruled that her politicking for the Union was permissible because (as the Director had already concluded) she was not a manager.

Meenan asked the Board to review the Regional Director's Decision and Direction of Election, but the Board denied review.

The Regional Director conducted elections in both new bargaining units on August 22, 1996. Meenan filed election objections which challenged the ballots of the oil and service dispatchers, as well as those of the executive secretary and the payroll/personnel administrator. The Regional Director overruled the Company's challenges and ordered that the ballots of these employees be counted. In the Plant Clerical bargaining unit—which included the dispatchers—seven employees voted in favor of Local 463; one voted for a different union; and four voted against union representation. In the Office Clerical bargaining unit—which included both the payroll/personnel supervisor and the executive secretary—25 employees voted in favor of Local 463 and 18 employees voted against union representation.[2] (The Regional Director's unaccountable decision to conduct the election in the off-season of the heating-oil business evidently depressed the turnout.) The Board denied the Company's request for review of the elections, and the Regional Director certified both bargaining units.

In November 1996, Local 463 demanded that the Company bargain with each of the units; the Company refused; and the Union filed unfair labor practice charges with the Board. The Board's General Counsel issued a complaint alleging that Meenan's refusals to bargain violated Sections 8(a)(1) and (5) of the NLRA (29 U.S.C. §§ 158(a)(1) and (5)). On March 3, 1997, the General Counsel filed a motion asking the Board to grant summary judgment. The Board issued a notice to show cause why summary judgment should not be granted. In response, the Company admitted its refusal to bargain but attacked the Union's certifications on the basis of the unit determinations and the disposition of company's objections and challenges in the representation proceedings.

---

1. Meenan originally contested the inclusion of its wholesale inventory supervisor and its fleet clerk in the collective-bargaining units. The Regional Director and the NLRB rejected the Company's arguments. Meenan does not challenge these findings on appeal. Brief for Respondent at 5 n. 1.

2. There were in addition six challenged ballots that did not affect the election's outcome.

The Board granted summary judgment to the Union in a Decision and Order dated March 28, 1997. It found that all of Meenan's defenses were or could have been litigated in the representation proceeding, and that Meenan had not advanced newly discovered and previously unavailable evidence, or other special circumstances that would require the Board to reexamine its rulings in the representation proceeding. The Board ordered Meenan to cease and desist from refusing to bargain with the Union, and from "interfering with, restraining, or coercing employees in the exercise of the rights guaranteed them" by the NLRA, and affirmatively required Meenan to bargain with the Union on the Union's request, to embody any understanding reached with the Union in a signed agreement, and to post a remedial notice. The order expressly included the dispatchers in Unit A, the Plant Clerical unit, and the "payroll/personnel administrator [and the] executive secretary" in Unit B, the Office Clerical unit.

The Board applied to this Court for enforcement of this final order on June 23, 1997.

## DISCUSSION

### A. The Confidential Status of Meenan's Payroll/Personnel Administrator and Executive Secretary

■ The Board excludes from collective-bargaining units individuals who fit the definition of "confidential employees." *NLRB v. Hendricks County Rural Elec. Membership Corp.*, 454 U.S. 170, 189, 102 S.Ct. 216, 228, 70 L.Ed.2d 323 (1981). Status as a confidential employee is a question of fact; we therefore review the Board's determination of this question under the deferential standard of substantial evidence. *See NLRB v. Case Corp.*, 995 F.2d 700, 705 (7th Cir.1993). "Substantial evidence" is no more than "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *American Textile Mfrs. Inst., Inc. v. Donovan*, 452 U.S. 490, 522, 101 S.Ct. 2478, 2497, 69 L.Ed.2d 185 (1981) (citation and internal quotation marks omitted).

The Supreme Court has identified two categories of confidential employees who are excluded from the NLRA's protection: (i) employees who "assist and act in a confidential capacity to persons who formulate, determine, and effectuate management policies in the field of labor relations," *Hendricks County*, 454 U.S. at 189, 102 S.Ct. at 228 (quoting *B.F. Goodrich Co.*, 115 NLRB 722, 724 (1956) (footnote omitted) (emphasis deleted)); and (ii) employees who "regularly have access to confidential information concerning anticipated changes which may result from collective-bargaining negotiations," *Hendricks County*, 454 U.S. at 189, 102 S.Ct. at 228 (quoting *Pullman Standard Div. of Pullman, Inc.*, 214 NLRB 762, 762–63 (1974)).

■ There are arguably some confidential aspects to many employment relationships, but the Board (for that reason) hews strictly to a narrow definition of a confidential employee. *See NLRB v. Los Angeles New Hosp.*, 640 F.2d 1017, 1023 (9th Cir. 1981). For this purpose, a confidential employee is one who has access to confidential information that is labor-related. In *Hendricks County*, the Supreme Court approved the Board's use of this "labor nexus" test; so employees who have access to confidential *business* information are not for that reason excludible from collective-bargaining units. *Hendricks County*, 454 U.S. at 190–91, 102 S.Ct. at 228–29. The Board looks to "the confidentiality of the relationship between the employee and persons who exercise managerial functions in the field of labor relations." *Ernst & Ernst National Warehouse*, 228 NLRB 590, 591 (1977) (internal quotation marks omitted). Moreover, the confidential labor-related information available to the employee must be information that is not already known to the union or in the process of being disclosed to it. *The Bakersfield Californian*, 316 NLRB 1211, 1212 (1995).

■ The rationale for the exclusion of confidential employees (as so defined) is that management should not be forced to negotiate with a union that includes employees "who in the normal performance of their duties may obtain advance information of the [c]ompany's position with regard to contract negotiations, the disposition of grievances,

and other labor relations matters." *Hendricks County*, 454 U.S. at 179, 102 S.Ct. at 223 (quoting *Hoover Co.*, 55 NLRB 1321, 1323 (1944)). An individual who routinely sees data which would enable the union to predict, understand or evaluate the bargaining position of the employer is therefore excluded from union membership.

We conclude that Angela Gabriel, the payroll/personnel administrator, and Rosemary Gould, the executive secretary to the general manager, are confidential employees. Both are in a confidential employment relationship with General Manager Zaweski, who is largely responsible for conducting Meenan's labor relations. Both women fit neatly within the category of confidential employee, identified by the Supreme Court in *Hendricks County*, as those who "assist and act in a confidential capacity to persons who formulate, determine, and effectuate management policies in the field of labor relations." *Hendricks County*, 454 U.S. at 189, 102 S.Ct. at 228 (citation and internal quotation marks omitted).

Zaweski has responsibility for preparing the Company's annual profit plan. Gabriel assists him in that project by filling out forms that show the current salaries and most recent pay raises of the Company's employees, including supervisors and at least some members of management.[3] The forms containing this information, as prepared by Gabriel, are forwarded to the Company's managers, who apply corporate salary increase guidelines to arrive at a recommendation for the timing and size of each employee's next raise, and review these recommendations with Zaweski. A copy of the revised recommendations is then sent to the Company's corporate department, and a copy is retained by Gabriel. If the corporate department revises the figures, Gabriel

receives a copy of the updated document. Gabriel thus has knowledge of the proposed salary increase—or decrease—of every Meenan employee. Often she learns of these proposed changes six to seven months before they are implemented.

Zaweski's executive secretary, Rosemary Gould, types the initial draft of the annual profit plan, and in so doing she gets to see the proposed wage and salary figures before they are sent to the corporate department and to Gabriel. Gould testified that she, Gabriel and Zaweski are the only non-corporate employees who see this document.[4]

Because Gabriel and Gould assist Zaweski with the preparation of the Company's annual profit plan, they have access to projected wage and salary data for both union and non-union employees. This information, in the hands of the Union, would give it a significant strategic advantage in negotiations. The Union could predict the size of the raises that management already planned to give both union and non-union employees, prior to any collective-bargaining session, and use that level of compensation as a floor for its demands. At the same time, information about the present and projected compensation of managers would afford leverage in bargaining for comparable raises for union members. Even if this information is never mentioned, it would enable the Union to anticipate and gauge management's resistance to its demands.

In summary, the projected wage and salary data contained in the profit plan influences and signals "the [c]ompany's position with regard to contract negotiations." *See Hendricks County*, 454 U.S. at 179, 102 S.Ct. at 223 (citation and internal quotation marks omitted). Meenan is not required to bargain with a union whose members have this ad-

---

3. Zaweski testified that he was "not certain" whether the profit plan included all of the Company's managers, but he knew that it did include all supervisors and employees. This testimony is confirmed by the testimony of his secretary, Rosemary Gould, that the profit plan includes, *inter alia*, all the "non-union" employees of the Company.

4. At her deposition, Gould was unsure whether she had typed a particular year's profit plan

which was provided to her. Consequently, the hearing officer did not allow the document into evidence. Nonetheless, she testified unequivocally that the annual production of this document is one of her job responsibilities. The Regional Director credited her testimony, finding that Gould "has typed proposed wage-increase information that is sent to headquarters for approval as part of [Meenan's] annual budget and 'profit plan.'"

vantage. *See Case Corp.*, 995 F.2d at 705 (denying confidential status to employees who *lacked* "access to wage or other confidential information").

The Board's finding that Gabriel and Gould are not confidential employees is unsupported by substantial evidence, and we therefore decline to enforce the Board's order insofar as Gabriel and Gould are included in the Office Clerical collective-bargaining unit. However, because exclusion of the votes of Gabriel and Gould would have made no difference to the outcome of the election (25 employees in this unit voted for the Union, 18 against), we uphold certification of this collective-bargaining unit.

## B. The Managerial Status of the Payroll/Personnel Administrator

 Like confidential employees, managerial employees are excluded from the protection of the NLRA by an exception established by the Board and approved by the courts. *NLRB v. Yeshiva Univ.*, 444 U.S. 672, 682–83, 100 S.Ct. 856, 862, 63 L.Ed.2d 115 (1980). This exclusion recognizes that managers' interests are generally aligned with those of the employer. *Northeast Utils. Serv. Corp. v. NLRB*, 35 F.3d 621, 626 (1st Cir.1994), *cert. denied*, 514 U.S. 1015, 115 S.Ct. 1356, 131 L.Ed.2d 214 (1995). Therefore, all managerial employees are excluded, not just those in positions which may give rise to labor-related conflicts of interest. *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 275, 94 S.Ct. 1757, 1762, 40 L.Ed.2d 134 (1974).

 Our holding that Gabriel is a confidential employee already excludes her from a collective-bargaining unit. But Meenan argues that Gabriel is a managerial employee as well, and that there is independent significance to her managerial status. Specifically, Meenan contends that she may have solicited employees' support for the Union's initial petition and that she later encouraged them to vote for the Union in the representation elections; that her doing so *as a manager* violated Section 7 of the NLRA[5] and thereby tainted the election process; and that we

should order the Board to hold an investigation and hearing regarding the legality of that election. We therefore address the question of Gabriel's managerial status.

The regulations promulgated under the NLRA provide that an employer may demand that a representation election be set aside by filing a timely objection. *See* 29 C.F.R. § 102.69(a) (1997). The Board must hold a post-election hearing with respect to "those objections or challenges which the regional director concludes raise substantial and material factual issues." 29 C.F.R. § 102.69(d). The Regional Director concluded that Meenan's objection raised no such issue because "even assuming that Gabriel engaged in activities in support of the Petitioner, inasmuch as Gabriel is [not a managerial employee], the Employer's objections lack merit."

Assuming without deciding that Gabriel's status as a managerial employee would justify a hearing and possibly a new election, we think that there is substantial evidence to support the Board's finding of fact that she is not management. *See NLRB v. Cooper Union for the Advancement of Science and Art*, 783 F.2d 29, 32–33 (2d Cir.) (*per curiam*), *cert. denied*, 479 U.S. 815, 107 S.Ct. 70, 93 L.Ed.2d 27 (1986); *Westinghouse Broadcasting Co., Inc. v. NLRB*, 503 F.2d 1055, 1055 (2d Cir.1974) (*per curiam*).

 Managerial employees are "those who formulate and effectuate management policies by expressing and making operative the decisions of their employer and who have discretion in the performance of their jobs independent of their employer's established policies." *S.S. Joachim and Anne Residence*, 314 NLRB 1191, 1194 n. 6 (1994); *see also Bell Aerospace*, 416 U.S. at 288, 94 S.Ct. at 1768. Occasionally, Gabriel advises the Company's managers on personnel matters. For example, on one occasion she asked Zaweski to extend medical benefits for a laid-off employee whose child had an expensive illness. Another time, she advised Zaweski that the Company was not obligated to rehire an employee who had exceeded her leave

---

**5.** Section 7 protects the right of employees to "form, join, or assist labor organizations," as

well as their right to "refrain from any or all of such activities." 29 U.S.C. § 157 (1994).

**320**

under the Family and Medical Leave Act. In 1995, when the Company had last negotiated with its unions, Zaweski as chief negotiator sought Gabriel's input with respect to several issues, and she suggested an allocation of holidays that was ultimately implemented in the collective-bargaining agreement,[6] and gave her opinion as to whether the Company's oil-delivery employees would cross a picket line if the service mechanics decided to strike.

But Gabriel's occasional advice to management is insufficient to make her a manager: "Managerial employees must exercise discretion within, or even independently of, established employer policy and must be aligned with management." *Yeshiva Univ.*, 444 U.S. at 683, 100 S.Ct. at 862. Gabriel's occasional advice may be sound, or good business, but her advice does not necessarily represent management interests—she also offers views as an *employee.* "[A]n employee may be excluded as managerial only if he represents management interests by taking or recommending discretionary actions that effectively control or implement employer policy." *Id.* There is no evidence that Gabriel takes discretionary action, or that her recommendations "control or implement" policy. Her recommendations were spoken directly to management but were not different in kind from any employee's deposit in a suggestion box. As the Regional Director found, her job duties are principally "ministerial or informational."[7]

Meenan also asserts that Gabriel "helped formulate and administer [the Company's] labor policy by assisting Zaweski in contract negotiations with Local 463 and administering the collective bargaining agreement." Brief for Respondent at 27. But Zaweski does not discuss with her the Company's wage proposals or negotiating strategy; she does not attend the union negotiations, or management strategy sessions; and she does not see collective-bargaining agreements until after they have been executed.

Substantial evidence supports the Board's finding that Meenan's payroll/personnel administrator is not a managerial employee for purposes of the NLRA. Consequently, we need not address Meenan's argument that the Board should have held a hearing in order to determine whether Gabriel's support for Local 463 impermissibly tainted the Union's representation election.

### C. The Supervisory Status of the Oil and Service Dispatchers

Supervisors are not protected under the NLRA and do not possess a right to bargain collectively. *Hanna Mining Co. v. District 2, Marine Eng'rs Beneficial Ass'n,* 382 U.S. 181, 188, 86 S.Ct. 327, 331, 15 L.Ed.2d 254 (1965). Supervisory status within the meaning of Section 2(11) of the NLRA is a question of fact. *NLRB v. The Grease Co.,* 567 F.2d 531, 533 (2d Cir.1977). Ordinarily, the Board's factual findings stand if they are supported by substantial evidence. 29 U.S.C. § 160(f); *see also Universal Camera Corp. v. NLRB,* 340 U.S. 474, 487–88, 71 S.Ct. 456, 464–65, 95 L.Ed. 456 (1951).

"The Board's findings regarding supervisory determinations are entitled to special weight." *J.L.M., Inc. v. NLRB,* 31 F.3d 79, 82 (2d Cir.1994) (citations and internal quotation marks); *see also Superior Bakery, Inc. v. NLRB,* 893 F.2d 493, 496 (2d Cir.1990); *NLRB v. Porta Sys. Corp.,* 625 F.2d 399, 401 (2d Cir.1980). But deferential judicial review is a thing that the Board

---

**6.** She suggested that the Company combine Washington's and Lincoln's birthdays into one Presidents' Day holiday, and that it celebrate holidays on the dates used by the federal government for federal employees.

**7.** Some of Meenan's arguments overstate the record. For example, Meenan states that Gabriel "administer[ed]" and was "in charge of" the company's drug-testing program. Brief for Respondent at 27 n. 10. Its corresponding appendix citations, however, show that her duties in connection with that program are purely cleri-

cal: she receives by fax the Social Security numbers of individuals randomly selected for testing by an outside testing agency, and subsequently receives another fax indicating the test results. Similarly, Meenan asserts that Gabriel is "in charge of complying with immigration laws." *Id.* The record reflects no more than that she places Immigration and Naturalization Service forms in employees' files and is responsible for posting notices relating to federal and state employee-rights statutes.

earns, and can forfeit. *See Children's Habilitation Ctr., Inc. v. NLRB,* 887 F.2d 130, 132 (7th Cir.1989). We recently observed that the Board has so often manipulated the NLRA's definition of "supervisor" to favor unions that diminished deference to the Board's fact-finding as to supervisory status is now appropriate. *Spentonbush/Red Star Cos. v. NLRB,* 106 F.3d 484, 492 (2d Cir. 1997). Accordingly, we now apply a "more probing" standard of review. *Id.*

■ Our probing review confirms the Board's finding that Meenan's dispatchers are not supervisors within the meaning of the NLRA. Section 2(11) of the NLRA defines a "supervisor" as

> any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.

29 U.S.C. § 152(11) (1994). If (1) an employee possesses at least one of the listed kinds of authority *and* (2) the exercise of that power involves the use of independent judgment which goes beyond the routine and clerical, the employee qualifies as a supervisor. *See Superior Bakery,* 893 F.2d at 496; *Schnuck Markets, Inc. v. NLRB,* 961 F.2d 700, 703 (8th Cir.1992); *NLRB v. Hale Container Line, Inc.,* 943 F.2d 394, 396–97 (4th Cir.1991).

There are circumstances in which dispatchers may be supervisors within the meaning of the statute. For example, the dispatchers in *NLRB v. Metropolitan Petroleum Co.,* 506 F.2d 616, 617–18 (1st Cir.1974), assigned individual drivers to tasks based upon the dispatchers' knowledge of the drivers' relative experience levels, were authorized to decide whether to assign overtime work or to postpone deliveries for a day or more, and they determined the number of employees needed each season, thereby influencing employment levels and layoffs. The court held that they were supervisors because they "exercised a large measure of independent discretion." *Id.* at 619.

The duties performed by Meenan's dispatchers do not require the exercise of any comparable judgment. Their tasks are routine and clerical in nature, and they are governed by parameters set by the Company. As the Regional Director found, Meenan's dispatchers "assign" employees to tasks and "direct" their efforts; allocation and coordination of labor is the entire function of the Company's dispatchers. But their decisionmaking is directed and circumscribed by clearly established Company policy, and they exercise no authority that transcends the routine or clerical, or that requires the use of independent judgment.

The oil dispatchers are guided by a computerized "degree day system," which considers the outdoor temperature and other factors to estimate when customers will require oil deliveries, and generates delivery tickets, grouped geographically. The Company also receives specific customer requests for deliveries, and the dispatchers assign priorities to these orders according to detailed procedures issued by management. In assigning routes to drivers, the dispatchers consider the orders' relative priority and efficient routing. Neither the determination of the most efficient route, nor the assignment of jobs as they come in during the day, requires a dispatcher to exercise independent discretion. *See B.P. Oil, Inc.,* 256 NLRB 1107, 1109–10 (1981) (holding that dispatchers whose decisionmaking was governed by "preexisting priorities" and "commonsense considerations" were not supervisors), *enf'd,* 681 F.2d 804 (3d Cir.1982) (table).

Similarly, the service dispatchers assign the Company's mechanics to jobs according to detailed procedures established by management. The dispatchers do not interact with customers; all orders are issued and prioritized by the customer service department, which also makes a time commitment to each customer. As these service orders come in, the dispatchers assign them to mechanics. Each mechanic notifies a dispatcher when the job is done, and is dispatched to the next job. The dispatchers are required to follow certain Meenan policies; for example,

if a customer reports that his burner has failed to operate, a mechanic must be assigned within three hours. The dispatchers are also bound to the time commitments made by the customer service representatives.

Dispatchers have no control over the number of drivers or mechanics employed by Meenan. Dispatchers meet emergencies in accordance with Company policy, by assigning employees available for overtime or by calling on subcontractors from a Company-provided list. At the hearing, contradictory testimony was given as to whether dispatchers have the authority to approve overtime or hire additional subcontractors. In any case, it is clear that they have no authority to hire, fire or transfer employees, or to adjust their grievances, and they do not attend management meetings.

Neither the oil dispatchers nor the service dispatchers monitor the performance of drivers or other employees. They are not involved in employee evaluation, and they have no authority to discipline employees. Sometimes they bring problems to the attention of management: if a customer complains, or if an employee is awol, the dispatcher notifies a supervisor, but the dispatcher makes no recommendation as to whether the employee should be disciplined. The fact that these reports may *result* in disciplinary action is irrelevant; the dispatcher is acting as a conduit for information and exercises no judgment in passing the knowledge along to management. *See Spentonbush,* 106 F.3d at 488–89 (evidence that tugboat captains had the authority to fire crew members was probative of supervisory status under § 2(11)); *Superior Bakery,* 893 F.2d at 496 (affording supervisory status to working foreman who had "authority to effectively recommend discipline exercising the use of independent judgment" (quotation marks omitted)).

We conclude that substantial evidence supports the Board's finding that Meenan's oil and service dispatchers are not supervisors, as that term is defined by section 2(11) of the NLRA.

## CONCLUSION

For the foregoing reasons, we modify the Board's order to remove Meenan's "payroll/personnel administrator" and its "executive secretary" from the Office Clerical collective-bargaining unit. The order as modified is enforced.