**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**MT. SINAI HOSPITAL, Respondent,**

**New York Health & Human Service Union 1199/SEIU, AFL–CIO, Intervenor.**

No. 00–4212.

United States Court of Appeals, Second Circuit.

May 17, 2001.

Sharon Block, Supervisory Attorney, Leonard R. Page, Acting General Counsel; John H. Ferguson, Associate General Counsel; Aileen A. Armstrong, Deputy Associate General Counsel, on the brief, Washington, DC, for petitioner.

David R. Marshall, Littler Mendelson, New York, NY, for respondent.

Daniel J. Ratner, Levy, Ratner & Behroozi; Sherri Levine, Richard Dorn, on the brief, New York, NY, for intervenor.

Present WINTER, STRAUB and POOLER, Circuit Judges.

## SUMMARY ORDER

AFTER ARGUMENT AND UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the petition for enforcement be and it hereby is GRANTED.

Pursuant to the National Labor Relations Act, as amended ("NLRA" or "Act"), 29 U.S.C. § 160(e), the National Labor Relations Board ("NLRB" or "Board") petitions this Court for enforcement of its Decision and Order dated July 31, 2000, affirming Administrative Law Judge ("ALJ") Michael A. Marcionese's rulings, findings, and conclusions and adopting his recommended order. That order requires Mt. Sinai Hospital ("Mt. Sinai") to cease and desist from its unfair labor practices and affirmatively requires it to take certain action necessary to effectuate the policies of the Act.

After a hearing, the ALJ found that Mt. Sinai, an acute-care medical facility in New York City which is party to a collective bargaining agreement ("CBA") with New York Health & Human Service Union ("Union"), reclassified a sous chef position in its "11 West" wing as an "assistant culinary manager" ("ACM") position in order to keep the sous chefs out of the Union's service and maintenance employees unit (the "Unit"), notwithstanding an arbitrator's award ruling that the sous chefs were not "supervisors" within the meaning of the Act and thus were part of the Unit. The ALJ first found that, prior to Mt. Sinai's reclassification of the sous chef position, the sous chefs were not "supervisors" within the meaning of 29 U.S.C. § 152(11) and thus were part of the Unit. The ALJ then found that the reclassification of the sous chef position as the ACM position constituted an alteration of the scope of the Unit without the Union's consent and a failure to bargain in good faith with the Union regarding the transfer of work from the Unit, in violation of NLRA sections 8(a)(5) and (1), 29 U.S.C. §§ 158(a)(5) and (1). Finally, the ALJ found that Union representative Estela Vazquez ("Vazquez") asked Mt. Sinai for relevant information regarding the ACM position and that Mt. Sinai violated sections 8(a)(5) and (1) by failing to furnish the requested information. On July 31, 2000, the Board affirmed the ALJ's findings and conclusions and adopted his rec-

ommended order. This petition for enforcement of the Board's order followed.

■■■ We conclude that there was substantial evidence supporting the finding that the sous chefs were not statutory supervisors prior to the reclassification, and thus were part of the Unit. The burden of proving supervisory status rests upon the party asserting it. *See New York Univ. Med. Ctr. v. NLRB*, 156 F.3d 405, 413 (2d Cir.1998). "Supervisory status within the meaning of Section 2(11) of the NLRA is a question of fact." *NLRB v. Meenan Oil Co., L.P.*, 139 F.3d 311, 320 (2d Cir.1998). "This Court reviews the decisions of the NLRB for substantial evidence. However, [t]he substantial evidence standard does not leave factual questions wholly to the NLRB; to the contrary, it requires [courts] to take account of the evidence that undermines the NLRB's conclusions." *New York Univ. Med. Ctr.*, 156 F.3d at 410 (internal quotation marks omitted). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schnurmacher Nursing Home v. NLRB*, 214 F.3d 260, 265 (2d Cir.2000) (internal quotation marks omitted). While we have indicated that the Board's findings regarding supervisory status are subject to a "more probing" review, *Spentonbush/Red Star Cos. v. NLRB*, 106 F.3d 484, 492 (2d Cir.1997); *see also New York Univ. Med. Ctr.*, 156 F.3d at 412; *Meenan Oil*, 139 F.3d at 321, we find it unnecessary in this case to engage in the largely semantic exercise of distinguishing "substantial evidence" review from "more probing" review. It is clear that the Board's findings must be supported by substantial evidence and that we must look at the entire record in determining whether such evidence exists. *See Schnurmacher*, 214 F.3d at 265 & n. 1.

"Supervisor" is defined in 29 U.S.C. § 152(11) as

> any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.

29 U.S.C. § 152(11). "To determine whether an employee is a supervisor under this section, three questions must be addressed: (i) does the employee have the authority to exercise at least one of the twelve listed powers?; (ii) if so, does the employee exercise a listed power using 'independent judgment'?; and (iii) does the employee exercise the power 'in the interest of the employer'? Each question must be answered in the affirmative if we are to deem the employee a supervisor under Section 2(11)." *Schnurmacher*, 214 F.3d at 264 (citing *NLRB v. Health Care & Retirement Corp. of Am.*, 511 U.S. 571, 573–74, 114 S.Ct. 1778, 128 L.Ed.2d 586 (1994)).

The Board found, and Mt. Sinai does not appear to contest, that there was no evidence that the sous chefs hired, transferred, laid off, recalled, promoted, discharged, or rewarded any employees. Thus, the only factors at issue here are assigning, responsibly directing, and disciplining (or effectively recommending such action).

We find substantial evidence to support the Board's finding that the sous chefs' authority to assign work involved little to no independent judgment. The employees supposedly directed by the sous chefs, the food preparers, performed routine work according to a checklist prepared by the

sous chefs in the morning. While the sous chefs did direct and instruct the food preparers to some extent, their authority to direct resulted, as the ALJ found, from their "superior training, skills and experience as chefs, and [was] incidental to carrying out their tasks as the lead cook, rather than their role as agents of the Employer." *See NLRB v. ADCO Elec., Inc.,* 6 F.3d 1110, 1117 (5th Cir.1993) (skilled worker's guiding of less experienced employees is not statutory supervision). "The performance of some supervisory tasks in a merely 'routine', 'clerical', 'perfunctory' or 'sporadic' manner does not elevate a rank-and-file employee into the supervisory ranks." *Amperage Elec., Inc.,* 301 NLRB 5, 13 (1991), *enf'd,* 956 F.2d 269 (6th Cir.1992).

The sous chefs' involvement in overtime decisions likewise was routine and clerical. The sous chefs did ask food preparers to work overtime on occasion, but these requests appeared to be based on routine workflow demands. Moreover, the evidence showed that employees could receive overtime pay without having obtained a sous chef's signature on their timecards.

The evidence also failed to show that the sous chefs had the authority "responsibly to direct" other employees. "To be responsible is to be answerable for the discharge of a duty or obligation. In determining whether 'direction' in any particular case is responsible, the focus is on whether the alleged supervisor is 'held fully accountable and responsible for the performance and work product of the employees' he directs." *Spentonbush,* 106 F.3d at 490 (internal quotation marks and citations omitted). "[A]ccountability for another's failure to perform a duty establishes as a matter of law an employee's supervisory power responsibly to direct." *Schnurmacher,* 214 F.3d at 267. There does not appear to be any record evidence

that any sous chef was held accountable for the work of a food preparer. Moreover, whether an employee has the power "responsibly to direct" essentially involves a determination whether the employee's powers, in the aggregate, "amount to being in charge." *Id.* at 266. The sous chefs do not appear to have been "in charge." Rather, they spent most of their time preparing food, in much the same manner as the food preparers.

Similarly, substantial evidence supports the Board's finding that the sous chefs exercised no independent judgment in disciplining employees and did not have the authority to discipline employees without consulting higher management. *See Meenan Oil,* 139 F.3d at 322 (holding that the "fact that [disciplinary] reports may *result* in disciplinary action is irrelevant"). As in *Meenan Oil,* here it appears that the sous chefs acted merely as "conduit[s] for information and exercise[d] no judgment in passing the knowledge along to management." *Id.* Moreover, even crediting Mt. Sinai's accounts of the sous chefs' disciplinary powers, the cited instances were too sporadic to demonstrate true supervisory authority.

Accordingly, the Board's finding that the sous chefs were not statutory supervisors and thus were in the bargaining Unit is supported by substantial evidence.

 A bargaining unit may not be altered without consent of the union. *See NLRB v. United Technologies Corp.,* 884 F.2d 1569, 1572 (2d Cir.1989) ("[O]nce the bargaining unit is established by the collective bargaining agreement or by NLRB action, an employer may not remove a job within the unit without either the approval of the Board or consent by the union."); *Holy Cross Hosp.,* 319 NLRB 1361, 1361 n. 2 (1995) (once a position has been included in a bargaining unit, by Board determination or consent of the parties, an

employer cannot remove the position without consent of the union). Similarly, bargaining unit work may not be transferred to non-unit employees without consent of the union. *See Hampton House*, 317 NLRB 1005, 1005 (1995) ("When an employer promotes an employee to a supervisory position and the new supervisor continues to perform former bargaining unit work ... the work is removed from the bargaining unit. That is a change in the bargaining unit's terms and conditions of employment, giving rise to the employer's bargaining obligation under Section 8(d) of the Act."). Mt. Sinai's actions following the arbitrator's award violated both of these proscriptions.

We find no merit in Mt. Sinai's argument that, even if the sous chefs were Unit members by virtue of the arbitrator's ruling, reclassification was authorized by the arbitrator's statement that "there is no contractual or statutory provision which prevents the Hospital from excluding supervisors at the point that such employees attain supervisory status." We agree with the Board that that portion of the arbitrator's ruling was mere *dicta*, in that it was not necessary to the resolution of the issue being arbitrated—namely, whether the sous chefs were supervisors within the meaning of the Act. Moreover, even if the statement was not *dicta*, it directly contradicts settled law interpreting the NLRA. *See United Technologies Corp.*, 884 F.2d at 1572; *Holy Cross Hosp.*, 319 NLRB 1361.

■ We likewise disagree with Mt. Sinai's position that, even if the sous chefs were in the Unit, it had no duty to bargain about their promotion to the ACM position because the impact on bargaining unit work caused by the transfer of work out of the Unit was insignificant. In *Lutheran Home of Kendallville, Indiana*, 264 NLRB 525, 525 n. 2 (1982), the Board held that

where an employer wishes to create a new supervisory position and the several unit employees whom the employer wishes to place in the new supervisory jobs will continue to perform duties which they had performed as unit employees, the unit will—as here—suffer an abolition of jobs. That loss of work is a change in the terms or conditions of employment which under Section 8(d) of the Act the employer is obligated to bargain over with the union.

That the loss of the sous chef position affected only three jobs in a Unit that contains 1,200 employees does not mean that the effect on Unit employees was "insignificant." The impact on the sous chef position was quite significant, in that the position was essentially removed from the Unit. *See id.* ("Where an employer wishes to select a unit employee to be a supervisor, *and the unit will not lose that employee's work*, the Board does not find that the employer has a duty to bargain over the selection." (emphasis added)). The number of Unit jobs lost is not dispositive. Here, there was a "significant detriment to [U]nit employees," thus requiring bargaining. *Holy Cross Hosp.*, 319 NLRB 1361, 1364 (1995).

■ Finally, we find sufficient evidence supporting the Board's finding that Mt. Sinai failed to provide the Union with relevant information. An employer's duty to bargain in good faith under sections 8(a)(5) and (1) of the Act includes the duty "to provide information that is needed by the bargaining representative for the proper performance of its duties." *NLRB v. Acme Indus. Co.*, 385 U.S. 432, 435–36, 87 S.Ct. 565, 17 L.Ed.2d 495 (1967). While the Board's factual findings must generally be reviewed for "substantial evidence," "[w]hen the NLRB's findings are based on the ALJ's assessment of the credibility of witnesses, they will not be overturned un-

less they are hopelessly incredible or they flatly contradict either the law of nature or undisputed documentary testimony." *Kinney Drugs, Inc. v. NLRB*, 74 F.3d 1419, 1427 (2d Cir.1996) (internal quotation marks and citations omitted). Although there was some dispute regarding whether Vazquez made a specific request for information at a January 19, 1995 meeting, the ALJ heard the testimony of all parties and reviewed the documentary evidence, and arrived at his conclusion. That conclusion is entitled to deference because the judge "sees the witnesses and hears them testify, while the Board and the reviewing court look only at cold records." *NLRB v. Walton Mfg. Co.*, 369 U.S. 404, 408, 82 S.Ct. 853, 7 L.Ed.2d 829 (1962).

Mt. Sinai's representative's own notes of the meeting indicate that Vazquez requested some information. Other Mt. Sinai witnesses testified only that they could not recall whether Vazquez requested the specific information. Thus, there is nothing in the record to render the Board's finding "hopelessly incredible."

We have considered all of Mt. Sinai's contentions in opposition to the petition and conclude for the above reasons that they provide no basis for denying enforcement of the Board's order. The petition for enforcement is GRANTED, and the order of the National Labor Relations Board is ENFORCED.