NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

ATLANTIC PARATRANS OF N.Y.C.,
INC., Respondent.

No. 07–1370–ag.

United States Court of Appeals,
Second Circuit.

Nov. 12, 2008.

Julie B. Broido, Supervisory Attorney, National Labor Relations Board, Washington, D.C. (Ronald E. Meisburg, General Counsel, John E. Higgins, Jr., Deputy General Counsel, John H. Ferguson, Associate General Counsel, Linda Dreeben, Assistant General Counsel, Rhonda G. Williford, Attorney, on the brief), Appearing for Petitioner.

Michael J. Mauro, Milman & Heidecker, Lake Success, NY. Motion for enforcement of an order of the National Labor Relations Board ("NLRB"), Appearing for Respondent.

Present: ROSEMARY S. POOLER, PETER W. HALL, Circuit Judges, and DAVID G. TRAGER,* District Judge.

### SUMMARY ORDER

The NLRB moves for enforcement of its order directing Atlantic Paratrans of N.Y.C., Inc. ("Atlantic") to recognize and bargain with the Transport Workers Union of America ("Union") as the agent for dispatchers employed by Atlantic. Atlantic contends that the dispatchers are supervisors and thus not protected by the National Labor Relations Act ("NLRA"). *See* 29 U.S.C. §§ 152(3) (defining "employee" to exclude "supervisors") & 152(11) (defining "supervisor"). We assume the parties' familiarity with the facts, proceedings below, and issues placed before the court.

The NLRA defines "supervisor" as

any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.

29 U.S.C. § 152(11). Because it is Atlantic that asserted that its dispatchers were supervisors, it had the burden of proving their status to the NLRB. *See NLRB v. Ky. River Cmty. Care, Inc.,* 532 U.S. 706, 711, 121 S.Ct. 1861, 149 L.Ed.2d 939 (2001). We must uphold the Board's determination that Atlantic failed to meet its burden as long as that determination "i[s] supported by substantial evidence on the record considered as a whole." 29 U.S.C. § 160(e); *see also NLRB v. Quinnipiac Coll.,* 256 F.3d 68, 73–74 (2d Cir.2001).

Supervisory status under the Act is a question of fact. *Quinnipiac Coll.,* 256 F.3d at 73. In this context, reversal based on a factual question is warranted only if, based on the record as a whole, "no rational trier of fact could reach the conclusion drawn by the Board." *NLRB v. Albany Steel, Inc.,* 17 F.3d 564, 568 (2d Cir.1994). Accordingly, this Court "may not displace the Board's choice between two fairly conflicting views, even though [it] would justifiably have made a different choice had the matter been before [it] *de novo.*" *Newspaper Guild of New York, Local No. 3 v. NLRB,* 261 F.3d 291, 301 (2d Cir.2001) (internal quotation marks omitted).

The NLRB's determination that the dispatchers do not use "independent judgment" in assigning drivers to their routes is supported by substantial evidence. First, it is uncontroverted that the large majority of routes and trips are

---

* The Honorable David G. Trager, United States District Judge for the Eastern District of New York.

preassigned by parties other than the dispatchers. Second, while a significant minority of trips must be reassigned based on unforeseen factors such as the addition of new trips, weather, and traffic delays, the factors that the dispatcher considers to determine who will receive the additional trips are largely mechanical and geographical and do not rest on considerations of the skill of the drivers. Therefore, the Board reached a conclusion supported by substantial evidence when it determined that the dispatchers did not exercise independent judgment. *See Oakwood Health Care, Inc.,* 348 NLRB No. 37, 2006 WL 2842124, *10, 2006 NLRB Lexis 448, **36–37 (NLRB Sept. 29, 2006) (holding that "to exercise 'independent judgment' an individual must ... act ... free of the control of others and form an opinion or evaluation by discerning and comparing data," but that evaluating and comparing data is not always sufficient because it may be routine and clerical in nature); *id.* at *17, 2006 NLRB Lexis 448, at **59–62 (holding that charge nurses who assigned nurses by matching their skills to patient needs exercised "independent judgment"); *id.* at *18, 2006 NLRB Lexis 448, at **63–64 (holding that charge nurses who rotated nurses on a geographical basis and without consideration of their skills or patient needs did not exercise "independent judgment"). In similar fashion, Atlantic's dispatchers perform the relatively mechanical task of matching available drivers to required trips but do not evaluate the qualifications of the drivers or whether the driver has the necessary skills to perform a given trip. Therefore, they do not exercise "independent judgment." *See NLRB v. Meenan Oil Co., L.P.,* 139 F.3d 311, 321 (2d Cir.1998) ("In assigning routes to drivers, the dispatchers consider the orders' relative priority and efficient routing. Neither the determination of the most efficient route, nor the assignment of jobs as they come in during the day, requires a dispatcher to exercise independent discretion."). Further, granting overtime to drivers as needed to complete assigned tasks is also a mechanical incident of assigning the drivers in the first place.

■ The NLRB did not specifically discuss Atlantic's claim that the dispatchers acted as supervisors in their duty to respond to accidents or other incidents on the drivers' routes. Atlantic presented this argument to the Board, however, and the record in this case presents no basis for this Court to reverse the Board's apparent conclusion that the dispatchers did not exercise independent judgment in responding to accidents or incidents on the drivers' routes. One member of Atlantic's management testified that in the event of an accident, a dispatcher obtains preliminary information from the driver involved, determines the necessary response—such as sending a field supervisor to the scene, and "take[s] whatever action is necessary in order to maintain the integrity of that route." Atlantic offered no evidence, however, demonstrating that in performing those duties a dispatcher is required to exercise the independent judgment necessary render that function supervisory under Section 152(11). There was no evidence in the record that a dispatcher relies on his or her own experience or expertise to assess the situation and determines the appropriate response. Atlantic offered no testimony from any dispatcher regarding how he or she decides how to proceed in the event of an accident or incident on a driver's route. Absent evidence that a dispatcher's decision in this case involved the exercise of greater discretion than merely determining the most efficient response based on geography or company policy, Atlantic failed to meet its evidentiary burden on this issue, and we cannot

substitute our conclusion for the Board's in this case.

■ In order to be found "responsibly to direct" others, a putative supervisor must be accountable for the actions of those he or she supervises "such that some adverse consequence may befall the one providing the oversight if the tasks performed by the employees are not performed properly." *See Oakwood,* 2006 WL 2842124, at \*9, 2006 NLRB Lexis 448, at \*31. While management representatives testified in conclusory terms that such adverse consequences were likely, Atlantic points to no instance in which (1) dispatchers were warned that they would be disciplined or face other adverse consequences if drivers did not perform their jobs properly or (2) dispatchers actually were disciplined based on drivers' misconduct or failure to perform their jobs properly. Thus, Atlantic failed to establish that dispatchers responsibly directed the drivers' work.

■ Substantial evidence also supports the Board's conclusions that dispatchers could not discipline or effectively recommend discipline. It is uncontested that dispatchers write up incidents that occur in the field, sometimes testify at disciplinary hearings, and are sometimes present when warnings are delivered by supervisors to a driver. However, writeups are not discipline. *Meenan,* 139 F.3d at 322 (finding no supervisory status in a similar circumstance and explaining that "[t]he fact that these reports may *result* in disciplinary action is irrelevant; the dispatcher is acting as a conduit for information and exercises no judgment in passing the knowledge along to management."). Nor is the dispatchers' conceded ability to temporarily remove drivers from the route discipline because the removal may or may not result in discipline depending on the actions of higher management. Finally, oral counseling and reprimands do not con-

stitute discipline. *See Misericordia Hosp. Med. Center v. NLRB,* 623 F.2d 808, 817 (2d Cir.1980) (finding no supervisory status where the employee in question "had no authority to do more than orally counsel and reprimand employees.") While Atlantic claims that the dispatchers had, at a minimum, the ability "effectively to recommend" discipline, this claim is supported only by the equivocal testimony of one dispatcher, which was not corroborated by the manager to whom she allegedly made the recommendation and which was contradicted by other testimony.

Finally, while dispatchers gave information to management that management considered in determining whether to retain a driver beyond his or her probationary period, it was the judgment of Robert Schiffman, the assistant project manager, that determined whether a driver would be retained. Schiffman testified that he utilized the dispatchers "to give [him] information." Therefore, the NLRB fairly viewed the dispatchers' role as simply giving information—rather than effective recommendations—to the decisionmaker, which is not sufficient for supervisory authority. *See Meenan,* 139 F.3d at 322.

We have considered Atlantic's remaining arguments and found them to lack merit and therefore enforce the order of the NLRB.