16-52-ag
*NLRB v. Nexstar Broadcasting Group, Inc.*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "Summary Order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 12th day of April, two thousand seventeen.

Present:
> PETER W. HALL,
> GERARD E. LYNCH,
> CHRISTOPHER F. DRONEY,
> > *Circuit Judges.*

---

NATIONAL LABOR RELATIONS BOARD,

> *Petitioner*,

> v.                                                                     16-52-ag

NEXSTAR BROADCASTING GROUP, INC. d/b/a WETM-TV,

> *Respondent*.

---

For Petitioner:          AMY H. GINN, (Usha Dheenan, *on the brief*), National Labor Relations Board, Washington, D.C.

For Respondent:          CHARLES W. PAUTSCH, Pautsch, Spognardi & Baiocchi Legal Group LLP, Milwaukee, Wisconsin.

---

Application for enforcement of an order of the National Labor Relations Board.

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the petition for enforcement is **GRANTED**.

The National Labor Relations Board ("NLRB" or "Board") petitions for enforcement of its October 30, 2015 order against Nexstar Broadcasting Group, Inc. We assume the parties' familiarity with the underlying facts, the procedural history, the ALJ's and the Board's rulings, and the arguments presented on appeal.

We review the Board's legal determinations "to ensure that they have a reasonable basis in law." *NLRB v. Caval Tool Div.*, 262 F.3d 184, 188 (2d Cir. 2001). We afford the Board "considerable deference," *id.*, and will reverse only if the legal determinations are arbitrary and capricious. *Cibao Meat Prods., Inc. v. NLRB*, 547 F.3d 336, 339 (2d Cir. 2008).

The Board's findings of fact are conclusive if they are supported by substantial evidence. 29 U.S.C. § 160(e); *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). We will accept the Board's findings of fact unless, "after looking at the record as a whole, we are left with the impression that no rational trier of fact could reach the conclusion drawn by the Board." *NLRB v. Katz's Delicatessen of Houston St., Inc.*, 80 F.3d 755, 763 (2d Cir. 1996).

Nexstar's legal and factual challenges to the Board's order are unpersuasive. First, the Board's legal determinations have ample basis in law. "[O]nce the bargaining unit is established by the collective bargaining agreement or by NLRB

action, an employer may not remove a job within the unit without either the approval of the Board or consent by the union." *NLRB v. United Techs. Corp.*, 884 F.2d 1569, 1572 (2d Cir. 1989). Indeed, "[a]dherence to a bargaining unit, once it is fixed, is central to Congress' purpose of stabilizing labor-management relations in interstate commerce." *Id.* Thus, unilaterally removing an employee from the bargaining unit violates §§ 8(a)(5) and 8(a)(1) of the National Labor Relations Act ("NLRA") and constitutes an unfair labor practice. *See Taos Health Sys., Inc.*, 319 NLRB 1361, 1361 n.2 (1995). Nexstar offers no compelling reason to upset that longstanding precedent.

Although the scope of the bargaining unit is subject to permissive bargaining, eliminating employees from the bargaining unit mid-contract "interferes with the required bargaining with respect to rates of pay, wages, hours and conditions of employment in a manner excluded by the [NLRA]." *Douds v. Int'l Longshoremen Ass'n*, 241 F.2d 278, 283 (2d Cir. 1957). Indeed, we have emphasized that "parties cannot bargain meaningfully about wages or hours or conditions of employment unless they know the unit of bargaining." *Id.* at 282.

Following Nexstar's argument to a logical conclusion, there is nothing to prevent an employer from whittling the bargaining unit down to nothing during the course of a labor contract. This, of course, cannot be. Given the foundational nature of the scope of a bargaining unit, we continue to recognize that unilateral changes to that scope are subject to the prohibition of unilateral changes announced in *NLRB v. Katz*, 369 U.S. 736 (1962); as subsequent case law makes clear, *see, e.g.*, *United*

*Techs. Corp.*, 884 F.2d at 1572, they are not the sorts of changes affecting conditions of employment considered breaches of contract rather than unfair labor practices under *Allied Chemical & Alkali Workers Local 1 v. Pittsburgh Plate-Glass Co.*, 404 U.S. 157 (1971), on which Nexstar exclusively relies.

Further, upon review of the record, we conclude that the Board's findings are supported by substantial evidence. Under the 2010 contract, both Doland and Kastenhuber were in the bargaining unit. A week after the new agreement was executed, Nexstar unilaterally removed Doland and Kastenhuber from the bargaining unit without the Union's consent. Although Nexstar and the Union agreed to a revised recognition clause in the 2013 contract, both editions excluded "supervisors" from the bargaining unit. Accordingly, there was no mid-contract change in the contract language, and no bilateral agreement existed to justify their removal.

The Board also reasonably found that neither Doland nor Kastenhuber meets the statutory definition of a "supervisor" under 29 U.S.C. § 152(11). As for Doland, the record shows that he may give advice or critiques to other videographers, but as the Board reasonably found, "advice by an experienced employee to a worker with less time on the job does not constitute Section 2(11) supervisory authority." Resp. App'x at 138. As we have said, "authority to direct" that results from "superior training, skills and experience" does not amount to supervisory authority under the NLRA. *NLRB v. Mt. Sinai Hosp.*, 8 F. App'x 111, 114 (2d Cir. 2001) (internal quotation marks omitted). Moreover, although Doland conducted some evaluations

4

of other employees and signed them as a "supervisor," there is no indication that any employment decisions were made based on the evaluations. And "[e]valuations that do not affect job status of the evaluated person are inadequate to establish supervisory status." *New York Univ. Med. Ctr. v. NLRB*, 156 F.3d 403, 413 (2d Cir. 1998).

As for Kastenhuber, the NLRB reasonably characterized the work assignments in which he participated as collaborative endeavors, determining that Kastenhuber does not "appoint[] an employee to a time" or "giv[e] significant overall duties" to employees. *See In Re Oakwood Healthcare, Inc.*, 348 NLRB 686, 689 (2006). Moreover, when Kastenhuber does reassign news crews to cover breaking stories, he does so in a rote manner by redirecting the closest news crew to the breaking story, presumably to cover it as quickly as possible. It was thus reasonable for the Board to conclude that those assignments did not constitute a use of his "independent judgment" as the NLRA requires. *Id.* at 693. With respect to both employees, we need not decide whether we would reach the same result as the Board in the first instance. We need only assure ourselves that the Board's legal conclusions were not arbitrary and capricious. *Cibao*, 547 F.3d at 339.

Finally, we discern no error in the Board's remedy. The NLRB is empowered "to take such affirmative action . . . as will effectuate the purposes of the [NLRA]." 29 U.S.C. § 160(c). The Board's remedial authority "is a broad discretionary one, subject to limited judicial review." *Fibreboard Paper Prods. Corp. v. NLRB*, 379 U.S. 206, 216 (1964). As such, we will uphold a remedial order unless we determine that

it is "a patent attempt to achieve ends other than those which can be fairly said to effectuate the policies of the [NLRA]." *Id.* (internal quotation marks omitted). We make no such determination here.

Ordering reinstatement of Doland and Kastenhuber simply undoes the consequences of Nexstar's unfair labor practice; it is not "forced bargaining," as Nexstar contends, because it merely reinstates the terms of the parties' fairly negotiated contract. Further, the Board's decision to order Nexstar to reimburse the Union for dues lost during the period that Doland and Kasterhuber were excluded from the bargaining unit is a reasonable remedy. Nexstar's claim that the payment is prohibited by 29 U.S.C. § 186(c) is plainly incorrect. That prohibition contains an explicit exception for payments to a union" "in satisfaction of a judgment of any court." *Id.* § 186(c)(2). The Board's remedial order, as enforced by this Court, falls within that exception. In addition, despite Nexstar's objections, the "make whole" order is contingent on Doland and Kastenhuber demonstrating economic loss. If they cannot—which is a possibility because they continued in their jobs at their previous pay rates—then Nexstar will face no financial obligation.

Simply put, the Board's factual findings are supported by substantial record evidence and its legal determinations have a reasonable basis in law. Its remedial order effectuates the purposes of the NLRA by restoring the status quo *ante*.

6

We have considered Nexstar's remaining arguments and find them to be without merit.

Accordingly, the petition for enforcement is **GRANTED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk